IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANNEZ W. HUNTER, AN INDIVIDUAL, ) <br> LARNELL EVANS, JR., AN INDIVIDUAL ) <br> FOR THE ESTATE OF ANNA SHORT HARRINGTON, ) <br> AN INDIVIDUAL ("AUNT JEMIMA"), ) <br> ) <br> PLAINTIFFS, ) <br> ) <br> v. ) <br> ) <br> PEPSICO INC., ET. AL. ) <br> ) <br> DEFENDANTS. ) | CASE NO.: 14-CV-6011 <br> JUDGE EDMOND E. CHANG |

## DEFENDANT PINNACLE FOODS GROUP, LLC'S
## MOTION TO DISMISS ALL COUNTS AGAINST IT

Almost six decades after the death of Anna Short Harrington ("Harrington"), D.W. Hunter and Larnell Evans, Jr. ("Plaintiffs"), allegedly her great-grandchildren, bring this sixty page, fifteen count complaint pro se on behalf of her estate.[1] At the core, their claims concern allegations about Quaker Oats Company ("Quaker"), which allegedly employed Harrington for a period between 1935 and her death in 1955 to play the advertising character of "Aunt Jemima." and allegedly used Harrington's likeness from 1937 as the image on a trademark that Quaker registered.

Plaintiffs also filed this action against Pinnacle Foods Group LLC ("Pinnacle"), although they make virtually no Pinnacle-specific allegations. In 1996 -- four decades after Anna Harrington's death -- Aunt Jemima frozen products were licensed to Pinnacle. (¶ 61.) On that wisp

---

[1] Plaintiffs also purport to bring this action on behalf of a class of fifteen Harrington's great-grandchildren. (Compl. ¶1.) As pro se litigants, Plaintiffs cannot bring a class action. *See* Fed. R. Civ. P. 23(a)(4); *Ross v. Hardy*, 2013 U.S. Dist. LEXIS 33621, *3 (N.D. Ill. 2013). Even if plaintiffs were attorneys, counsel who is also a named class representative, or a close family member, cannot fairly and adequately protect the interests of the class due to conflicts of interest. *See, e.g., Susman v. Lincoln Am. Corp.* 561 F.2d 86, 93-94 (7th Cir. 1977), *cert. denied,* 445 U.S. 942 (1980). Finally, the 15 member class does not meet Rule 23's numerosity requirement. Fed. R. Civ. P. 23(a) (1).

of an allegation, unconnected in time and substance to Anna Harrington, the plaintiffs claim that Pinnacle owes Harrington's estate billions in damages from unpaid compensation, royalties, misappropriation or theft relating to sales revenues from certain food products and merchandise.

The Court should dismiss all claims against Pinnacle with prejudice. *First*, Plaintiffs lack standing to assert claims on behalf of Anna Harrington's estate. They do not allege that a lawful probate estate for Harrington's estate was filed, approved or opened by any court upon her death, or that they are lawful executors or administrators of her estate. Even then, pro se litigants like the Plaintiffs here cannot act as counsel for an estate as a matter of Illinois law. (*See* Section II below.)

*Second*, the statute of limitations lapsed many years ago for all of the claims that Plaintiffs purport to allege. (*See* Section III below.)

*Third*, as a matter of law, every one of Plaintiff's counts against Pinnacle is fatally defective on one or more grounds, either because (a) Plaintiffs assert a claim that is not cognizable as a matter of law, (b) Plaintiffs do not plead the necessary elements against Pinnacle – indeed, in several counts there are *no* allegations at all against Pinnacle, and/or (c) the claims are preempted or duplicative of other failed claims. (See Section IV below.)

## ALLEGATIONS AGAINST PINNACLE

The Complaint sets out few allegations against Pinnacle, and those that are asserted are neither well-pleaded nor plausible.

### A. Virtually all of Plaintiffs' allegations concern conduct before 1996, which is before Pinnacle had any connection to Aunt Jemima products.

Although Plaintiffs liberally use the term "Defendants" throughout the Complaint, in an apparent effort to sweep broadly in describing purported misconduct, the only parties defined as "Defendants" are PepsiCo and Quaker Oats. (¶ 31.) The core allegations address an alleged relationship and conduct between Quaker and Plaintiffs' alleged great grandmother, Harrington,

2

an employee of Quaker Oats from around 1935[2] to the time of Harrington's death in 1955. (¶ 13.) None of those allegations speak to any relationship or conduct between Anna Harrington and Pinnacle. Plaintiffs concede that the various types of conduct they complain about occurred well before Aunt Jemima frozen products were licensed to Pinnacle in 1996.[3] (¶ 61.)

> **B.  The allegations against Pinnacle for conduct after it licensed certain Aunt Jemima frozen products in 1996 are conclusory and/or have no logic to them.**

With respect to allegations against Pinnacle for conduct in 1996 or thereafter, Plaintiffs assert that Pinnacle uses the Harrington "entire family bloodline likeness" in world commerce (¶¶ 95, 101), allegedly selling around $300,000,000 million dollars in Aunt Jemima product lines without paying royalties to Harrington's estate. (¶ 76.) Plaintiffs allege that Pinnacle used the "likeness of" Harrington, Deloris Hoffman and Olivia Hunter to sell pancakes, including Harrington's 64 original formulas. (¶ 99.)

Plaintiffs allege that Harrington -- who died some 40 years before Pinnacle had any connection to Aunt Jemima frozen products -- did not give Pinnacle authority to misappropriate her 64 recipes and/or 22 menus. (¶113.) Although Harrington died in 1955 and Pinnacle began licensing Aunt Jemima products four decades later, Plaintiffs allege Pinnacle "had advance knowledge of" Harrington's "vulnerability" and employed her with a conscious disregard not to pay a full accounting of royalties. (¶149.) Plaintiffs also allege that Pinnacle had "advance knowledge and conscious disregard" of Quaker Oats and PepsiCo's alleged oppression, fraud, and malice including "to misappropriate Harrington's 64 original recipes and 22 complete menu products" -- which also allegedly occurred decades before. (¶138.) As well, Plaintiffs assert their

---

[2] *See* PepsiCo Inc., The Quaker Oats Company, and Janet Lynn Silverberg's Memorandum in Support of Their Motion to Dismiss at pp. 3-5 (attempting to summarize Plaintiffs' central allegations). These defendants are collectively "PepsiCo Defendants."

[3] Despite alleging that Pinnacle did not license Aunt Jemima frozen products until 1996, Plaintiffs allege that Pinnacle along with Quaker Oats "recorded every element of Harrington's work product to induce customers to patronize Aunt Jemima." (¶114.)

conclusion that Pinnacle has been unjustly enriched to the detriment of Harrington's Estate and the Harrington great grandchildren by not paying royalties for 60 years but benefiting from the sale of products with Harrington's likeness. (¶171.)

Finally, Plaintiffs allege that at some unspecified time, some unidentified Pinnacle executives refused to acknowledge Harrington's existence as Aunt Jemima on a website,[4] (¶¶ 89, 115, 134) and their alleged concealment of her "historical contribution" and "the origin of the recipes" allegedly caused the public to believe that Aunt Jemima is a "mythical character." (¶115.)

## ARGUMENT

**I.  Standard of Review.**

Under Fed. R. Civ. P. 12(b) (6), when a complaint fails "to state a claim to relief that is plausible on its face" and presents nothing more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," it must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 980 (7th Cir. 1999). It must include "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-5 (7th Cir. 2010). Moreover, "group pleading is generally forbidden because each defendant is entitled to know what he is accused of doing." *Person Most Responsible v. Best Buy, Inc. (In re Musicland Holding Corp.)*, 398 B.R. 761, 774 (Bankr. S.D.N.Y. 2008); *Suburban Buick, Inc. v. Gargo*, 2009 U.S. Dist. LEXIS 46124,*120 (N.D. Ill. 2009). Where there is no possibility that a complaint could be amended to state a claim upon which relief can be granted, the complaint should be dismissed with prejudice. *Moranski v. GMC,* 433 F. 3d 537, 539 (7th Cir. 2005); *Holman v. Indiana,* 211 F. 3d 399, 406-407 (7th Cir. 2000).

---

[4] What website, and who, are not clear as the allegation is a group allegation against unidentified Pinnacle executives, PepsiCo, and Quaker Oats and refers to "their historical website" as though the three companies were one.

**II.     Plaintiffs Do Not Have Standing To Bring Any of Their Claims.**

Plaintiffs do not have standing to bring this pro se action on behalf of Ms. Harrington's estate. *First,* they do not allege that a probate estate for Ms. Harrington's estate was filed, approved or opened. *See, e.g., Cmty. Bank of Plano v. Otto,* 324 Ill.App.3d 471, 475 (2d Dist. 2001). *Second,* they do not allege that they are authorized as executors or administrators of any opened estate on behalf of Harrington. *Jackson v. Kessner*, 206 A.D.2d 123, 126-27 (N.Y. App. Div. 1994); *McGill v Lazzaro*, 92 Ill.App.3d 393, 395 (1st Dist. 1980). *Third,* even if they were authorized as executors, as a matter of law, pro-se non-attorney plaintiffs cannot act as counsel representing an estate. *Jones v. Li et al,* 409 Ill. App.3d 1149, *15 (1st Dist. 2011). To minimize the time needed by the Court to address this issue, Pinnacle incorporates and adopts the standing arguments made in the PepsiCo Defendants' Motion to Dismiss and Memorandum in Support as though stated herein.

**III.    All of Plaintiffs' Claims Are Time Barred.**

Any cognizable counts were filed too late under the applicable statutes of limitations. To minimize the time needed by the Court to address this issue, Pinnacle incorporates and adopts the statute of limitations arguments made in the PepsiCo Defendants' Motion to Dismiss and Memorandum in Support as though stated herein.

**IV.     Plaintiffs Fail to State a Claim for Relief Against Pinnacle As a Matter of Law.**

   *A.     Right of Publicity/Privacy Theories (Counts 1, 2 and 3)*

None of Plaintiffs' right of publicity or privacy claims hold water, for a host of reasons. *First,* Plaintiffs offer the allegation that Pinnacle uses the Harrington "family bloodline likeness" in world commerce. (¶¶ 95, 101.) This "family bloodline likeness" apparently consists of Harrington, Olivia, and an aunt named Deloris Hoffman. (*Id.*) But there simply is no recognized cause of action for using a "family bloodline likeness." Rather, the New York Civil Rights Law ("New York Act") and Illinois Right of Publicity Act ("Illinois Act") under which Plaintiffs

5

purport to bring its right of publicity theories protect against the use of an individual's image or likeness.

*Second,* Plaintiffs assert that Pinnacle knowingly used the "likeness of" Harrington but they also allege that the image of Aunt Jemima was altered in 1989 and a new trademark was registered in 1992 -- all before Pinnacle licensed an Aunt Jemima product line, thereby defeating that theory. (*See* ¶¶ 21, 94, 132, Exh. 44 to Compl.) In the same vein, Plaintiffs allege that Pinnacle knowingly used the "likeness of" Hoffman, who allegedly played the role of Aunt Jemima at some point following Harrington's death (¶¶ 19, 99), but also before Pinnacle allegedly licensed an Aunt Jemima product line. Finally, Plaintiffs allege that Pinnacle knowingly used the "likeness of" Olivia, specifically her hair or hair follicle or "hair style." (¶¶ 99, 132, 209, 218.) But Olivia died in 1992 – again, before Pinnacle allegedly licensed an Aunt Jemima product line.

*Third***,** Plaintiffs seek damages on behalf of a deceased individual (Anna Harrington) who died decades before Pinnacle licensed Aunt Jemima frozen products -- and neither New York nor Illinois recognize such claims. *See* N.Y. Civ. Rights Law §§50 and 51 (prohibited act applies only to "living persons").[5] *See also, e.g., Frosch v. Grosset & Dunlap, Inc.*, 75 A.D.2d 768, 768 (N.Y. App. Div. 1980); *Smith v. Long Island Jewish-Hillside Med. Ctr.*, 118 A.D.2d 553, 554 (N.Y. App. Div. 1986); 765 ILCS 1075/30. While Section 30 of the Illinois Act protects an individual's identity for 50 years after death, it does so only if a person died after January 1, 1999. 765 ILCS 1075/30. Individuals like Harrington (and Olivia) who died before 1999 are not protected. Illinois' earlier common law right of publicity did not provide protection after death. *Carlson v. Del Pub. Co.*, 65 Ill. App. 2d 209, 213-214 (1st Dist. 1965).

---

[5] To the extent that Harrington allegedly was a pancake celebrity that took on the role of the character of Aunt Jemima, the "plain language" of Sections 50 and 51 make clear that the statutory right "does not extend to fictitious characters adopted or created by celebrities." *Burke v. Mars. Inc. et al.*, 571 F.Supp.2d 446, 453 (S.D.N.Y.) (The Naked Cowboy was not a living person, but a character the plaintiff took on when performing).

*Fourth,* New York and Illinois law provide a remedy only where a person's name, portrait, or picture is used "without . . . written consent." N.Y. Civ. Rights L. § 50; 765 ILCS 1075/30; *Trannel v. Prairie Ridge Media*, 2013 Ill. App. (2d) 120725, P14 (2d Dist. 2013).[6] Plaintiffs allege -- and incorporate this allegation into every count of the Complaint -- that Harrington "entered into a written contractual agreement to play the Actress role of Aunt Jemima" which included royalty payments "after immortalizing her image inside the USPTO throughout world commerce in advertisement and/or for various products." (¶73.) This allegation directly contradicts Plaintiffs' allegation that Harrington's image was used without consent and defeats their right of publicity and privacy claims. The Court does not need to accept a factual premise that is directly contradicted by the allegations in the Complaint. *See Gold v. Devoted Creations, LLC*, 2013 U.S. Dist. LEXIS 137032 (S.D. Ind. 2013)(dismissing a trademark infringement claim based on a factual premise that was directly contradicted by the allegations in the Complaint).

*Fifth,* Plaintiffs purport to bring Count 3 under Illinois and New York common law--but neither has a common law right of action. *Stephano v. News Group Publs.,* 64 N.Y.2d 174, 182-183 (N.Y. Ct. App. 1984) (New York Act provides the "sole" remedy); *Trannel* at ¶14 (Illinois common law tort of appropriation of likeness ceased to exist when the Illinois Act became effective); *Hampton v. Guare*, 195 A.D.2d. 366, 367 (N.Y. App. Div. 1993) (same as *Stephano*); *Zoll v. Ruder Finn, Inc. et al*, 2004 U.S. Dist. LEXIS 144, *12 (S.D.N.Y. 2004) (same). They cite, too, California's right of privacy (Cal. Civ. Code §3344) in Count 5. There is no basis for applying California law: Plaintiffs allege Harrington was a New York resident, entered into the purported contract with Quaker in New York, suffered injury allegedly caused by the defendants while located in New York, and died and is buried in New York. The substantive law of the place of

---

[6] The New York Act applies to use for "advertising" purposes, and Illinois Act applies to use for "commercial" purposes.

injury or place with the most significant point of contacts governs under Illinois choice of law rules. *See Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 866 (7th Cir. 2010); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941) (choice of law rules for a federal court exercising supplemental jurisdiction are those of the forum state).

In short, Plaintiffs cannot state a cause of action against Pinnacle for violation of the right to privacy or publicity under either New York or Illinois law, and Counts 1, 2 and 3 should be dismissed with prejudice.

### B.   Civil Conspiracy (Count 4)

Neither New York nor Illinois recognizes civil conspiracy as an independent cause of action; rather, a conspiracy claim stands or falls with the alleged underlying tort. *Merrilees v. Merrilees,* 2013 IL App (1st) 121897, P49 (1st Dist. 2013)(dismissal proper); *Indeck North American Power Fund LP v. Norweb P.C.*, 316 Ill. App. 3d 416, 432 (1st Dist. 2000)(dismissal proper); *Hebrew Inst. for Deaf & Exceptional Children v. Kahana*, 57 A.D.3d 734, 735 (N.Y. App. Div. 2008); *Salvatore v. Kumar*, 45 A.D.3d 560, 563 (N.Y. App. Div. 2007). The underlying tort alleged in Count 4 -- "violation of ICERD," an international convention (¶107) -- fails because ICERD does not provide for a private right of action.[7] (*Infra* at 14.) And to the extent that Count 4 cites to provisions of the Illinois Right of Publicity Act (¶105), Plaintiff fails to state a claim as to Pinnacle. (*Supra* at 5-8.)

Nor do Plaintiffs otherwise sufficiently plead the elements of civil conspiracy. They do not allege specific facts that Pinnacle knew of the existence of a civil conspiracy and knowingly and voluntarily agreed to participate in it, as required to state a claim. *See Redelmann v. Claire Sprayway, Inc. et al.,* 375 Ill. App. 3d 912, 924 (1st Dist. 2007)*; McClure v. Owens Corning*

---

[7] Plaintiffs refer to "15 U.S.C. §1120" for wrongful registration of a trademark, within Count 4, but do not state an independent cause of action under it. (¶ 109.) They do not allege Pinnacle registered the trademarks, nor can they.

*Fiberglas Corp.,* 188 Ill.2d 102, 133-134 (1999). They do not even allege facts to establish that Pinnacle knew or had reason to know of Quaker Oats' alleged past history of allegedly wrongful acts toward Plaintiffs' relatives, without which Pinnacle could not have entered into an agreement knowingly or voluntarily to suppress it. *See Doe v. Brouillette*, 389 Ill. App.3d 595, 617. Lacking specific allegations against Pinnacle, Plaintiffs cannot as a matter of law establish Pinnacle's knowledge of or acquiescence in a wrongful scheme or that it knowingly agreed to conspire.

In lieu of any specific allegations, Plaintiffs simply lump Pinnacle together with other defendants in a way that Pinnacle is not apprised of what, if anything, it has done wrong. Nor does it save the claim to assume an agency relationship among all defendants and repeatedly asserting that they were co-conspirators or agents of the particular one who allegedly carried out certain wrongful conduct. The lumping together of defendants and reliance on conclusory pleading do not state a cause of action for civil conspiracy. *Bober v. Ill. Workers' Comp. Comm'n,* 2012 IL App (1st) 102042-U P46 (2012). All conspiracy claims against Pinnacle should be dismissed with prejudice.

    *C.*    *Unfair Competition. (Counts 5 and 14)*

Plaintiffs assert claims for "unfair competition" and "deceptive acts and practices" under Section 43 of the Lanham Act, 15 U.S.C. § 1125 and under New York General Business Law Section 349.

    **1.**    **The Lanham Act**

*First,* Plaintiffs lack standing for their claims under §1125(a) because they cannot meet the zone-of-interests test, as required by *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1390, 188 L. Ed. 2d 392, 407, 2014 U.S. LEXIS 2214 *26 (2014). To come within the zone of interests in a §1125(a) suit for false advertising, a plaintiff must allege "an injury to a commercial interest in reputation or sales," that is, "economic or reputational injury flowing

9

directly from the deception wrought by the defendant's advertising" and which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

Here, Plaintiffs do not allege the required injury against Pinnacle. They do not allege injury to a commercial interest in reputation or sales, or economic injury or reputational injury flowing directly from alleged deception by Pinnacle. They do not allege that a deception of consumers by Pinnacle caused consumers to withhold trade from Harrington (or from Olivia or, for that matter, from the family or from her estate). Rather, they merely allege consumers were lead to believe that the Aunt Jemima role, which Harrington played as a Quaker employee -- but concededly did not create -- was "mythical" (¶¶ 115, 209) well before Pinnacle was connected to Aunt Jemima products.

*Second,* Plaintiffs have not stated a Lanham Act claim against Pinnacle for false or deceptive advertising because they do not identify any false advertisement by Pinnacle. *See, e.g., Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F. 3d 813, 819 (7th Cir. 1999**).** It is not enough to allege that Pinnacle's website did not say that Harrington was employed by Quaker long before Pinnacle was connected to Aunt Jemima products (¶114) because, among other things, there is no allegation as to how or why the absence of this information is likely to influence purchasing decisions. And while Plaintiffs allege that Pinnacle concealed the "origin of the recipes" (*id.*), they do not identify any Pinnacle advertisement.

*Third*, Plaintiffs have not alleged false endorsement, either. Plaintiffs plead that consumers consider Aunt Jemima to be a "mythical character" (¶115) while also conceding that Aunt Jemima is a role created and played by others before Harrington. (*See* ¶¶ 48, 49, 73, 75.) Therefore, Plaintiffs have not pleaded that consumers will believe that Harrington endorsed Pinnacle's products or that believing Harrington had endorsed Pinnacle's products would affect consumers' decisions to purchase Pinnacle's products in any way.

*Finally,* Count 14 purports to bring a claim pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117). That section provides for damages calculations for a number of statutes but it does not provide for a separate cause of action.

For these reasons, all Lanham Act against Pinnacle should be dismissed with prejudice.

### 2. New York General Business Law

Plaintiffs' claims brought against Pinnacle under New York General Business Law Section 349 should be dismissed for similar reasons as their claims under the Lanham Act. *See, e.g., Gucci America, Inc. v. Duty Free Apparel, Ltd. et al.,* 277 F. Supp. 2d 269, 273-275 (S.D.N.Y. 2003). Plaintiffs do not allege that Aunt Jemima product advertising by Pinnacle was misleading in a material way to consumers or to the market. Moreover, Plaintiffs do not allege any specific injury they suffered as a result of any alleged misleading or deceptive advertising by Pinnacle.

In sum, Counts 5 and 14 against Pinnacle should be dismissed with prejudice.

### D. Breach of Contract (Count 6) and Accounting (Count 10)

Count 6 does not allege that Pinnacle breached a contract with Harrington and, therefore, should be dismissed.[8]

In the same vein, Count 10 for an accounting should be dismissed with prejudice because Plaintiffs do not allege any contractual right to an accounting from Pinnacle or any confidential or fiduciary relationship with Pinnacle. *See Lawrence v. Kennedy*, 95 A.D.3d 955, 958 (N.Y. App. Div. 2012); *Humana Health Plan, Inc. v. Heritage Ind. Med. Group*, 2001 U.S. Dist. LEXIS 78, *4 (N.D. Ill. 2001). The count merely seeks relief based on substantive counts that should be dismissed. *Collier v. Murphy et. al.,* 2003 U.S. Dist. LEXIS 4821, *12 (N.D. Ill. 2003).

---

[8] To the extent assert a breach of good faith and fair dealing, there is no independent cause of action for breach of good faith and fair dealing. *Acevedo v. CitiMortgage, Inc*., 2013 U.S. Dist. LEXIS 42173, *8 (N.D. Ill. 2013); *Seip v. Rogers Raw Materials Fund, L.P*., 408 Ill. App. 3d 434, 444 (1st Dist. 2011).

### E. Fraud Theories (Count 7 and 8)

Plaintiffs assert "Fraud by Concealment" and "Promissory Fraud." (¶¶133-153.) Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A plaintiff must allege "the who, what, where, and when of the alleged fraud." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Here, however, Plaintiffs do not allege who was involved in fraudulent conduct by Pinnacle, what the fraudulent conduct was, where the fraud occurred, or when it occurred – thereby failing to meet Rule 9(b)'s most basic pleading requirements.

Beyond noncompliance with Rule 9(b), both Counts 7 and 8 fail to state the elements of fraud. *First,* in the fraudulent concealment count, plaintiffs do not plead concealment of any *material* fact by Pinnacle that it had a duty to disclose – a required element of a fraudulent concealment claim. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012); *Bober v. Ill. Workers Comp. Comm'n.,* 2012 IL App. (1st Dist. 2012). *Second,* in the promissory fraud count, Plaintiffs do not plead any material misrepresentation by Pinnacle with intent not to perform. *See Venables v. Sagona*, 85 A.D.3d 904, 906 (N.Y. App. Div. 2011) (promissory fraud requires material misstatement with present undisclosed into to perform). *Third,* any purported "fraud" by Pinnacle is patently implausible and must be dismissed under *Twombly*. Plaintiffs assert that Pinnacle "maintained an *advance knowledge* and conscious disregard of Harrington's vulnerability and employed her with conscious disregard" to "misappropriate her 64 original recipes and 22 complete menus" (¶¶138, 149), which Plaintiffs allege occurred decades before Pinnacle licensed Aunt Jemima frozen product lines. (¶ 61.)

For all of these reasons, Plaintiffs' fraud claims against Pinnacle should be dismissed with prejudice.

12

F.     **Conversion (Count 9)**

Count 9 purports to bring a cause of action against Pinnacle for conversion, which requires pleading the plaintiff's possessory right or interest in the property and the defendant's dominion over the property or interference with it, in derogation of plaintiff's rights. *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. App. Div. 2006). The Complaint does not adequately allege either element. Instead, Plaintiffs allege the conclusion that Pinnacle, among other defendants, "had exclusive control over the use of Harrington's name, voice, or likeness in connection with products, goods and other merchandising rights" and "to collect revenue as a result," and that Pinnacle and Quaker acted as her agent. The New York Civil Rights Act's preemptive effect is fatal to common law conversion claims "where the plaintiff has no property interest in his image, portrait or personality outside of the protections of" the Act. *Guare,* 195 A.D.2d at 366-67.

Also, Plaintiffs' conversion claim duplicates their purported contract claim: plaintiffs allege that they have "an immediate right to possession of" unspecified royalties and money – royalties that appear to be the same royalties claimed under their breach of contract claim. The conversion claim against Pinnacle should be dismissed with prejudice on this ground as well. *Melcher v. Apollo Med. Fund Mgmt. LLC,* 25 A.D.3d 482, 483 (N.Y. App. Div. 2006).

H.     **Unjust Enrichment and Disgorgement (Count 11)**

Count 11 attempts to plead that Pinnacle has been unjustly enriched to the detriment of Harrington's Estate and her great grandchildren by not paying royalties for 60 years (although it only allegedly licensed Aunt Jemima products since 1996), and benefiting from the sale of products with Harrington's likeness. (¶171.)  *First,* Plaintiffs incorporated their contract allegations into their count for unjust enrichment. (¶170.)  There can be no cause of action for unjust enrichment where a contract governs the same subject matter between the parties. *See Clark-*

13

*Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *Network Enters., Inc. v. Reality Racing, Inc.*, 2010 U.S. Dist. LEXIS 89598, *19-20 (S.D.N.Y. 2010) (the existence of a contract governing subject matter precludes an unjust enrichment claim even as to a non-signatory); *Guinn v. Hoskins Chevrolet et al,* 361 Ill.App.3d 575, 604 (1st Dist. 2005). *Second,* "[t]here is no cause of action in New York for unjust enrichment arising from alleged unauthorized use of personal image." *Zoll v. Ruder Finn, Inc. et al*, 2004 U.S. Dist. LEXIS 144, *12 (S.D.N.Y. 2004). *Third,* the unjust enrichment claim is merely for relief based on substantive counts that should be dismissed. *Collier,* 2003 U.S. Dist. LEXIS at 12.

Plaintiffs' effort to plead a claim for disgorgement fails to state a claim because disgorgement is "a remedy, not a separate claim." *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 2013 WL 3718071, at *10 (S.D.N.Y. July 15, 2013). Count 11 against Pinnacle fails and should be dismissed with prejudice.

### I. Violations of ICERD (Counts 12, 13)

Counts 12 and 13 allege claims under the International Convention on the Elimination of All Forms of Racial Discrimination ("ICERD"). But alleged violations of ICERD are not a recognized theory of recovery, nor is there a basis to recognize them as theories of recovery. When the United States ratified ICERD, the Senate specifically stated that the ICERD was not self-executing. 140 Cong. Rec. S7634-02. Absent a treaty that is self-executing or implementing statutes -- neither of which applies to ICERD – a treaty cannot support a private right of action. *See Medellin v. Texas*, 552 U.S. 491, 505, 128 S. Ct. 1346 (2008). Therefore, there is no private right of action under the ICERD, and Counts 12 and 13 should be dismissed with prejudice.

### J. Attorney Fees (Count 15)

Count 15, asserting a stand-alone claim for attorney fees and costs, is not a recognized cause of action. *See, e.g.*, *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1006 (7th

Cir. 1989) (citing *Kerns v. Engelke*, 76 Ill. 2d 154, 166-167 (Ill. 1979)). Also, pro se litigants cannot recover attorney fees. *See e.g., Krecioch v. United States*, 316 F.3d 684, 688 (7th Cir. 2003).

### K.   Misappropriation of Trade Secrets

Plaintiffs implausibly allege that Pinnacle – which had no connection to Aunt Jemima frozen products until 40 years after Harrington died – misappropriated her 64 recipes and/or 22 menus (¶113). To the extent Plaintiffs are attempting to assert misappropriation of trade secrets, that claim should also be dismissed with prejudice against Pinnacle as implausible under *Twombly* and because Plaintiffs do not plead any facts that would establish the "64 menus" and "22 recipes" were trade secrets, as explained in PepsiCo's Motion to Dismiss.

### CONCLUSION

WHEREFORE, defendant Pinnacle respectfully requests that the Court enter an order dismissing all claims against Pinnacle with prejudice.

PINNACLE FOODS GROUP LLC

By its attorneys:

/s/ Stephanie A. Scharf

Stephanie Scharf, ARDC # 06191616
Deirdre A. Fox, ARDC # 6206110
SCHARF BANKS MARMOR, LLC
333 West Wacker Drive, Suite 450
Chicago, Illinois 60601
312-726-6000

## CERTIFICATE OF SERVICE

I, Deirdre A. Fox, certify that a copy of the foregoing DEFENDANT PINNACLE FOODS GROUP LLC'S MOTION TO DISMISS ALL COUNT AGAINST IT was served upon the below-listed individuals via the Court's ECF System and electronic mail in the case of pro se plaintiff on this 27th day of October, 2014.

/s/ Deirdre A. Fox

SERVICE LIST

| | |
|---|---|
| *Plaintiff Pro Se:* | Dannez W. Hunter<br>1275 Lincoln Avenue<br>Suite 1<br>St. Paul, Minnesota<br>E-mail: dannezhunter@hotmail.com<br>Fax: 612.395.9111 |
| *Attorneys for Defendants, PepsiCo Inc., The Quaker Oats Company, and, Janet Lynn Silverberg:* | Dean N. Panos<br>Jason M. Bradford<br>JENNER & BLOCK LLP<br>353 N. Clark Street<br>Chicago, IL 60610<br>Phone: 312.222.9350<br>E-mail: dpanos@jenner.com<br>E-mail: jbradford@jenner.com |
| *Attorneys for Hillshire Brands Company:* | John I. Grossbart<br>Aimee E. Graham<br>DENTONS US LLP<br>233 S. Wacker Drive<br>Suite 7800<br>Chicago, Illinois 60606<br>Phone: 312.876.8000<br>E-mail: john.grossbaart@dentons.com<br>E-mail: aimee.graham@dentons.com |