**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| D.W. HUNTER, an Individual, LARNELL EVANS, JR., an Individual FOR THE ESTATE OF ANNA SHORT HARRINGTON, an Individual, | |
| Plaintiffs, | Case No. 14CV6011 |
| vs. | The Honorable Edmond E. Chang |
| PEPSICO, INC., a North Carolina Corporation, THE QUAKER OATS COMPANY, a New Jersey Corporation, JANET LYNN SILVERBERG, an individual, PINNACLE FOODS GROUP, LLC, a Delaware Corporation, THE HILLSHIRE BRANDS COMPANY, a Maryland Corporation, and JOHN DOES 1 through 25, inclusive, | |
| Defendants. | |

**PEPSICO, INC., THE QUAKER OATS COMPANY AND JANET
SILVERBERG'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Dean N. Panos
Jason M. Bradford
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone:  312 222-9350
Facsimile:  312 527-0484

October 27, 2014

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

I.      BACKGROUND: PLAINTIFFS' ALLEGATIONS ............................................3

      A.      Allegations About Ms. Harrington And The Character Aunt Jemima ...........3

      B.      The Origins of Aunt Jemima And Aunt Jemima Pancake Mix......................5

      C.      Plaintiffs' Claim $2 Billion in Damages ........................................................6

II.     LEGAL STANDARD ..........................................................................................6

III.    GOVERNING LAW ...........................................................................................7

IV.    ARGUMENT .......................................................................................................8

      A.      Plaintiffs Lack Standing To Bring These Claims............................................8

      B.      Plaintiffs' Claims Are Time Barred ...............................................................9

      C.      Plaintiffs Fail To State A Claim As A Matter of Law ...................................10

            1.      Claims Not Recognized by Law .........................................................11

                  a.      Violation of the International Convention on the
Elimination of all forms of Racial Discrimination
(Counts 12 and 13) ...............................................................11

                  b.      Civil Conspiracy (Count 4) .......................................................11

                  c.      Attorney's Fees and Costs (Count 15).......................................12

            2.      Counts That Fail To Adequately State A Claim ..................................12

                  a.      Unfair Competition (Counts 5 and 14).......................................12

                      (i)      The Lanham Act ...............................................................12

                    (ii)     New York General Business Law ....................................14

                  b.      Breach of Contract (Count 6) .....................................................14

                  c.      Fraud (Counts 7 and 8)..............................................................15

                  d.      Accounting (Count 10)................................................................16

             3.      Claims That Are Implausible Or Fail On Their Face ..........................17

        a.        **Publicity and Privacy Related Claims (Counts 1-3)** .................17

        b.        **Conversion (Count 9)**....................................................................**18**

        c.        **Unjust Enrichment and Disgorgement (Count 11)** ...................**19**

        d.        **Misappropriation of Trade Secrets** ...........................................**20**

   **D.**    **Plaintiffs Fail To Allege Facts That Support A Claim Against Ms.
Silverberg.**.........................................................................................................**22**

**CONCLUSION** .............................................................................................................**22**

# TABLE OF CASES

**Page(s)**

**CASES**

*Ackerman v. Northwestern Mut. Life Ins. Co.*,
    172 F.3d 467 (7th Cir. 1999) .................................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................6

*Ashland Mgmt. Inc. v. Janien*,
    624 N.E.2d 1007 (N.Y. 1993)...............................................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................6

*Blair v. Nevada Landing P'ship*,
    859 N.E.2d 1188 (Ill. App. Ct. 2006) ...............................................................................9, 18

*C=Holdings B.V. v. Asiarim Corporation*,
    992 F. Supp. 2d 223 (S.D.N.Y. 2013)...................................................................................14

*Carlson v. Del Pub. Co.*,
    213 N.E. 2d 39 (Ill. App. Ct. 1965) ......................................................................................18

*Champion Parts, Inc. v. Oppenheimer & Co.*,
    878 F.2d 1003 (7th Cir. 1989) ...............................................................................................12

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
    516 N.E.2d 190 (N.Y. 1987)..................................................................................................19

*Cmty. Bank of Plano v. Otto*,
    755 N.E.2d 532 (Ill. App. Ct. 2001) .......................................................................................8

*Cohen v. Facebook, Inc*,
    798 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................................................14

*Colavito v. New York Organ Donor Network, Inc.*,
    860 N.E.2d 713, 717 N.Y. 2006 ............................................................................................19

*Conley v. Gibson*,
    355 U.S. 41 (1957)...................................................................................................................7

*Cushing v. City of Chi.*,
    3 F.3d 1156 (7th Cir. 1994) .....................................................................................................7

*Dee v. Rakower*,
   112 A.D.3d 204 (N.Y. App. Div. 2013) ...........................................................14

*Frosch v. Grosset & Dunlap, Inc.*,
   75 A.D.2d 768 (N.Y. App. Div. 1980) ............................................................17

*Futures, LLC-Series 2 v. Sysco Chi., Inc.*,
   2012 WL 851556 (N.D. Ill. Mar. 13, 2012)......................................................9

*Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*,
   2009 WL 2242331 (E.D.N.Y. July 27, 2009)....................................................9

*Grant v. Cnty. of Erie*,
   542 F. App'x 21 (2d Cir. 2013) .......................................................................18

*Green v. Benden*,
   281 F.3d 661 (7th Cir. 2002) .............................................................................1

*Gurvey v. Cowan, Liebowitz & Latman, P.C.*,
   2013 WL 3718071 (S.D.N.Y. July 15, 2013) ..................................................20

*Hebrew Inst. for Deaf & Exceptional Children v. Kahana*,
   57 A.D.3d 734 (N.Y. App. Div. 2008) ............................................................11

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
   191 F.3d 813 (7th Cir. 1999) ...........................................................................13

*Hot Wax, Inc. v Warsaw Chem. Co.*,
   45 F. Supp. 2d 635 (N.D. Ill. 1999) ..................................................................9

*Hudson Hotels Corp. v. Choice Hotels Int'l*,
   995 F.2d 1173 (2d Cir. 1993)...........................................................................21

*Hunter v. Tarantino*,
   No. 2:10-CV-03387, ECF No. 18 (C.D. Cal. Jul. 15, 2010)..............................1

*In re R.M. Kliment & Frances Halsband, Architects*,
   3 A.D.3d 143 (N.Y. App. Div. 2004) ................................................................9

*Jackson v. E.J. Brach Corp.*,
   176 F.3d 971 (7th Cir. 1999) ...........................................................................22

*Jackson v. Kessner*,
   206 A.D.2d 123 (N.Y. App. Div. 1994) ............................................................8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)...........................................................................................7

*Krecioch v. United States*,
   316 F.3d 684 (7th Cir. 2003) ................................................................12

*Lawrence v. Kennedy*,
   95 A.D.3d 955 (N.Y. App. Div. 2012) ...................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S.Ct. 1377 (2014).................................................................12, 13

*Matter of Colo. Springs Air Crash*,
   867 F. Supp. 630 (N.D. Ill 1994) ............................................................7

*Matter of Motor Veh. Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.*,
   674 N.E.2d 1349 (N.Y. 1996)..................................................................9

*McGill v Lazzaro*,
   416 N.E.2d 29 (Ill. App. Ct. 1980) ..........................................................8

*Medellin v. Texas*,
   552 U.S. 491, 128 S.Ct. 1346 (2008).....................................................11

*Melcher v. Apollo Med. Fund Mgmt. LLC*,
   25 A.D.3d 482 (N.Y. App. Div. 2006) ...................................................19

*Myskina v. Conde Nast Publ'ns, Inc.*,
   386 F. Supp. 2d 409 (S.D.N.Y. 2005).....................................................17

*Network Enters., Inc. v. Reality Racing, Inc.*,
   2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010).........................................19

*Perma-Pipe, Inc. v. Liberty Surplus Ins. Corp.*,
   --- F. Supp. 2d ----, 2014 WL 1600570 (N.D. Ill. Apr. 21, 2014) ...........7

*Person Most Responsible v. Best Buy, Inc. (In re Musicland Holding Corp.)*,
   398 B.R. 761 (Bankr. S.D.N.Y. 2008)....................................................22

*Portfolio Acquisitions, LLC v. Feltman*,
   391 Ill. App. 3d 642 (Ill. App. Ct. 2009) .................................................9

*Ratcliffe v. Apantaku*,
   742 N.E.2d 843 (Ill. App. Ct. 2008) ........................................................1

*Robinson v. McNeil Consumer Healthcare*,
   615 F.3d 861 (7th Cir. 2010) ...................................................................7

*Salvatore v. Kumar*,
   45 A.D.3d 560 (N.Y. App. Div. 2007) ...................................................11

*Sarei v. Rio Tinto, PLC*,
   671 F.3d 736 (9th Cir. 2011) .................................................................................11

*Smith v. Long Island Jewish-Hillside Med. Ctr.*,
   118 A.D.2d 553 (N.Y. App. Div. 1986) ................................................................17

*Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*,
   118 F.3d 955 (2d Cir. 1997)..................................................................................21

*SongByrd, Inc. v. Estate of Grossman*,
   206 F.3d 172 (2d Cir. 2000)....................................................................................9

*Stayart v. Yahoo! Inc.*,
   651 F. Supp. 2d 873 .............................................................................................13

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ..................................................................................7

*Trannel v. Prairie Ridge Media, Inc.*,
   987 N.E.2d 923 (Ill. App. Ct. 2013) ................................................................17, 18

*Venables v. Sagona*,
   85 A.D.3d 904 (N.Y. App. Div. 2011) ..................................................................16

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir.1992) ...............................................................................13

*Wilson v. Garcia*,
   471 U.S. 261 (1985)................................................................................................9

*Zimmerman v. Poly Prep Country Day School*,
   888 F. Supp. 2d 317 (E.D. N.Y. 2012) .................................................................16

*Zinter Handling, Inc. v. General Elec. Co.*,
   101 A.D.3d 1333 (N.Y. App. Div. 2012) ...............................................................9

*Zoll v. Ruder Finn, Inc.*,
   2004 U.S. Dist. LEXIS 144 (S.D.N.Y. Jan. 7, 2004)............................................20

# INTRODUCTION[1]

Aunt Jemima is a fictional character that was created in 1889. Nevertheless, fifty-nine years after the death of Ms. Anna Short Harrington, Plaintiffs D.W. Hunter and Larnell Evans, Jr. have commenced this action pro se on behalf of "Ms. Harrington's estate."[2] Plaintiffs assert that they are owed two billion dollars because Ms. Harrington made unidentified public appearances on behalf of the Aunt Jemima brand at some point between 1935 and her death in 1955. By Plaintiffs' own account: the "Aunt Jemima" brand was created approximately 40 years before any alleged association between Ms. Harrington and the brand; that the products she allegedly invented predated her association; that Ms. Harrington was neither the first, only or last person to represent the brand; and that the trademark has transformed significantly during the past century. Nonetheless, without any of the specificity required to adequately plead a legally cognizable contract claim, Plaintiffs demand approximately three quarters of a century's worth of royalties and other forms of compensation. As is characteristic of other litigation commenced by Mr. Hunter,[3] Plaintiffs claims are frivolous and should be summarily dismissed.

---

[1] Defendants PepsiCo, Inc., The Quaker Oats Company ("Quaker") and Janet Lynn Silverberg are collectively referred to as the "PepsiCo Defendants." PepsiCo, Inc. and Quaker have been grouped for purposes of this memorandum. But Plaintiffs' claims against PepsiCo, Inc. also fail because Plaintiffs have pled only conclusory allegations against PepsiCo, Inc. and have made no allegations that would support piercing the corporate veil to allow liability against PepsiCo, Inc. for the alleged conduct of Quaker.

[2] Plaintiffs assert that this action is also on behalf of a class of 15 of Ms. Harrington's great-grandchildren. (Compl. ¶1.) As pro se litigants, however, Plaintiffs cannot bring a class action. *See* Fed. R. Civ. P. 23(a)(4); *see also Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). Plaintiffs also cannot bring this action pro se on behalf of an estate with other individuals as beneficiaries because it would constitute the unauthorized practice of law. *See, e.g.*, *Ratcliffe v. Apantaku*, 742 N.E.2d 843, 847 (Ill. App. Ct. 2008).

[3] The PepsiCo Defendants are aware of at least 25 separate federal or state court lawsuits commenced pro se by Mr. Hunter alleging various forms of discrimination or claims relating to well-known public figures or characters. For example, Mr. Hunter filed a lawsuit against Quenten Tarantino, alleging theft of Mr. Hunter's ideas for the "Kill Bill" movies, which was dismissed. *Hunter v. Tarantino*, No. 2:10-CV-03387, ECF No. 18 (C.D. Cal. Jul. 15, 2010).

Specifically, Plaintiffs' First Amended Complaint ("Complaint") asserts separate claims against the PepsiCo Defendants for "deprivation of the right of publicity under New York law" (Count 1); "deprivation of the right of publicity under Illinois Law" (Count 2); "violation of the rights of publicity under Illinois and New York common law" (Count 3); "civil conspiracy" (Count 4); "violations of federal unfair competition" (Count 5); "breach of contract" (Count 6); "fraud by concealment" (Count 7); "promissory fraud" (Count 8); "conversion" (Count 9); "accounting" (Count 10); "unjust enrichment and disgorgement" (Count 11); "disparate impact under the International Convention on the Elimination of all Forms of Racial Discrimination" (Count 12); "violation of the International Convention on the Elimination of all Forms of Racial Discrimination" (Count 13); "deceptive acts and practices" (Count 14); and "attorney's fees and costs" (Count 15).

The Court should dismiss all of these claims with prejudice for three separate and independent reasons. <u>First</u>, Plaintiffs do not allege that a lawful probate estate for Ms. Harrington's estate was filed, approved or opened by any court upon her death, or that they are lawful executors or administrators of her estate. Accordingly, even assuming that Plaintiffs are Ms. Harrington's great-grandchildren, as a matter of law, they lack standing to assert claims on behalf of the estate of Ms. Harrington. (*See* Section IV.A below.)

<u>Second</u>, to the extent Plaintiffs allege claims that are recognized under some applicable law, the statute of limitations for all of those claims lapsed many years ago. (*See* Section IV.B below.)

<u>Third</u>, each of Plaintiffs' 15 claims is defective as a matter of law. Plaintiffs either fail to plead a claim recognized by law, fail to plead the elements necessary to establish a claim

recognized by the law, or assert a claim that is implausible or fails on its face. (*See* Section IV.C below.)

Additionally, the Complaint makes no allegations that support any claim against Ms. Silverberg. (*See* Section IV.D below.)

For each of those reasons, as set forth more fully below, the PepsiCo Defendants respectfully request this Court grant their motion to dismiss the complaint, with prejudice, in its entirety.

## I.        BACKGROUND: PLAINTIFFS' ALLEGATIONS

Most of Plaintiffs' allegations are not well-plead or plausible, however for the Court's convenience, the PepsiCo Defendants have attempted to summarize Plaintiffs' central allegations below. [4]

### A.        Allegations About Ms. Harrington And The Character Aunt Jemima

Plaintiffs allege that Ms. Harrington was born in 1897, in South Carolina. (Compl. ¶9.) At some point, she moved from South Carolina to Syracuse, New York and worked as a maid and a cook for a fraternity house and New York Governor Thomas Dewey. (*Id.* ¶¶9-10.)

According to Plaintiffs, in 1935, Quaker discovered Ms. Harrington at a New York state fair and she "became the Actress to play the role of Aunt Jemima." (*Id.* ¶11.) Plaintiffs allege that same year, Ms. Harrington "entered into a written contractual agreement with Quaker Oats to do guest appearances and commercials for 15 years while using her 'own original pancake mix' and to share in the gross proceeds and/or royalties of any and all Aunt Jemima products over the duration of 15 years." (*Id.* ¶¶12, 49, 70.)  According to Plaintiffs, it "logically follows"

---

[4] Plaintiffs are proceeding pro se and have filed a 60-page complaint with over 100 additional pages of exhibits. The PepsiCo Defendants have  attempted to fairly construe Plaintiffs' core allegations.  To the extent the Court believes that the PepsiCo Defendants have not addressed certain allegations or claims made by Plaintiffs, the PepsiCo Defendants request the opportunity to do so.

that Ms. Harrington and Quaker entered a written contract because they believe that Quaker had written contracts with two individuals who had earlier portrayed the Aunt Jemima character, Ms. Nancy Green and Ms. Anna Robinson. (*See id.* ¶¶138.) Plaintiffs do not provide a copy of the contract, or allege with any particularity any of the terms of the contract. As reflected in the e-mails attached to the Complaint, after conducting a diligent search the PepsiCo Defendants advised Mr. Hunter that they could find no evidence of any relationship or contract between Ms. Harrington and any of the PepsiCo Defendants. (Compl. Ex. 42.)

Plaintiffs further allege that from 1935 to 1955, Ms. Harrington acted in commercials and made public appearances as Aunt Jemima, but do not identify any specific commercials or public appearances Ms. Harrington made for the PepsiCo Defendants. (*Id.* ¶13.) Although Plaintiffs allege that Ms. Harrington was not well-represented and was exploited when she entered into the purported written contract (*id.* ¶12), they assert that her compensation from Quaker allowed her "to buy a 22 bedroom mansion in the heart of Syracuse." (*Id.* ¶16.)

Plaintiffs also allege that at some point during Ms. Harrington's relationship with Quaker, she created her own pancake mix, but they plead no details about her recipe or its creation. They further allege that she and Quaker agreed that Quaker could sell her pancake mix and she would share in the profits, and Quaker thereafter improperly misappropriated that mix. (*Id.* ¶¶75-78.) However, Plaintiffs provide no information about that agreement or the alleged misappropriation. Plaintiffs further claim that Quaker also allegedly procured from Ms. Harrington 64 original recipes and 22 menus in addition to the pancake mix, (*Id.* ¶82.) but again, provide no supporting facts or details about these recipes and menus. (*See id.*)

Ms. Harrington died and was buried in New York in 1955. (*Id.* ¶13.)

### B. The Origins of Aunt Jemima And Aunt Jemima Pancake Mix

Although Plaintiffs' Complaint alleges that Ms. Harrington portrayed Aunt Jemima sometime during 1935-1955 and that her "Aunt Jemima" pancake mix was misappropriated, Plaintiffs concede that Ms. Harrington was not the original "Aunt Jemima" character and that Ms. Harrington was not the inventor of the "Aunt Jemima" brand pancake mix or recipe. (Compl. ¶¶43-46.)  According to Plaintiffs, the origin of the "Aunt Jemima" brand goes back to 1889, when Christ Rutt and Charles Underwood began producing a self-rising pancake ready mix under the name "Aunt Jemima." (*Id.* ¶43.) Plaintiffs further allege that in 1890, the Aunt Jemima Manufacturing Company was purchased by RT Davis and that he "then brought to life the Aunt Jemima character Ms. Nancy Green as his spokeswomen." (*Id.* ¶43.) According to Plaintiffs, Quaker entered into written contracts with Ms. Green, and that purportedly Ms. Green "was signed to an exclusive contract which would give her the right to impersonate Aunt Jemima for the rest of her life." (*Id.* ¶118 (emphasis removed).) Plaintiffs' allege that Ms. Green was "proclaimed 'Pancake Queen,'" and that "she traveled on promotional tours all over the country." (*Id.*) Plaintiffs further allege that in 1893, the company that then-produced the pancake mix hired a "figure head" to portray Aunt Jemima at the World's Fair in Chicago. (*Id.* ¶¶43, 46.) According to plaintiffs, a Ms. Anna Robinson portrayed the Aunt Jemima character prior to Ms. Harrington, and that Ms. Robinson "stayed on the Quaker Oats Company payroll until her death in 1951." (*Id.* ¶118.)

In 1914, the company allegedly producing and selling the pancake mix was renamed the Aunt Jemima Mill Company, which was purchased by Quaker in 1926.[5] (*Id.* ¶47.) Plaintiffs further allege that throughout the 1930s, the Aunt Jemima character was used in newspaper and magazine ads, which claimed the pancake recipe was "Aunt Jemima's own." (*Id.* ¶17.) In 1937,

---

[5] PepsiCo, Inc. purchased Quaker on August 2, 2001.

Quaker allegedly trademarked the character "Aunt Jemima." (*Id.* ¶53.) Since then, numerous Aunt Jemima products have been marketed and sold. (*Id.* ¶¶54-61.) As appears to be reflected in Plaintiffs' own allegations, at least four different persons played the Aunt Jemima character. (*Id.* ¶¶43, 118, 124.) The Aunt Jemima character is not a depiction of any one individual, but instead a fictional character.

### C. Plaintiffs' Claim $2 Billion in Damages

Plaintiffs allege that the PepsiCo Defendants withheld revenue statements from Ms. Harrington and her family to cause them to "believe that they were not owed any money relating to merchandising," in connection with her purported 1935 contract. (Compl. ¶¶64-67.) In October 2013, Mr. Hunter contacted Quaker demanding that they "pay a fair share of royalties and justifiable compensation for their Grandmother Anna S. Harrington playing to Actress Aunt Jemima for 15 years, and the Defendants failed to respond to the billion dollar 'request'." (*Id.* ¶68.)

Plaintiffs also assert they are entitled to recovery based on the allegations that the PepsiCo Defendants misappropriated Ms. Harrington's pancake mix, recipes and menus. (*Id.* ¶¶75-78.)

## II. LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a complaint that fails "to state a claim to relief that is plausible on its face" and presents nothing more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, the Court should ignore conclusory allegations and accept only well-pleaded facts. *Twombly*, 550 U.S. at 555-57. The complaint must include "enough details about the subject-matter of the case

to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-5 (7th Cir. 2010).

Where there is no possibility that a complaint could be amended to state a claim upon which relief can be granted, the complaint should be dismissed with prejudice. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cushing v. City of Chi.*, 3 F.3d 1156, 1159 (7th Cir. 1994).

## III.   GOVERNING LAW

Plaintiffs' claims—allegedly on behalf of the estate of Ms. Harrington—are principally brought under New York, Illinois, federal, and/or international law.

Plaintiffs allege numerous state law causes of action, which they assert fall under this Court's supplemental jurisdiction. (*See, e.g.,* Compl. ¶36.) When a federal court exercises supplemental jurisdiction, the choice of law rules for the forum state, here Illinois, apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Matter of Colo. Springs Air Crash*, 867 F. Supp. 630, 633 (N.D. Ill 1994). Under Illinois choice of law rules, the substantive law of the place of injury or the place with the most significant point of contacts will govern. *See Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 866 (7th Cir. 2010); *Perma-Pipe, Inc. v. Liberty Surplus Ins. Corp.*, --- F. Supp. 2d ----, 2014 WL 1600570, at *3 (N.D. Ill. Apr. 21, 2014).

Plaintiffs allege that at all times relevant to their claims, Ms. Harrington was a resident of New York, she entered into the purported contract at issue in New York, she suffered injury caused by Quaker while located in New York, and she died and is buried in New York. For those reasons, the PepsiCo Defendants submit that Counts 1-4, 6-11, and 14 are governed by New York law.[6]

---

[6] Plaintiffs allege that Counts 2-3 are governed partially by Illinois law and that Count 5 is partially governed by California law. (Compl. ¶¶98-105, 112.) Although the PepsiCo Defendants believe Plaintiffs are incorrect, for purposes of Plaintiffs' claims, Illinois and California law are not substantively different.

Count 5 is governed by federal law.

Counts 12-13 and 15 are not recognizable claims.

## IV.  ARGUMENT

### A.  Plaintiffs Lack Standing To Bring These Claims

Plaintiffs assert that they are suing on behalf of the "estate of Ms. Harrington." (*See, e.g.,* Compl.'s caption, ¶¶6, 8, 11, 97, and signature block). Plaintiffs, however, lack standing to sue on behalf of Ms. Harrington's estate. <u>First</u>, they do not allege that a lawful probate estate for Ms. Harrington's estate was lawfully filed, approved or opened in a New York court, or any other court, upon her death. In fact, where no estate has been opened, the estate does not exist and a court lacks jurisdiction to adjudicate claims related to the estate. *See, e.g., Cmty. Bank of Plano v. Otto*, 755 N.E.2d 532, 535 (Ill. App. Ct. 2001).

<u>Second</u>, Plaintiffs do not allege that they have been authorized to act as executors or administrators of any opened estate on behalf of Ms. Harrington. Only executors and administrators have standing to bring suit to recover property of an estate, absent extraordinary circumstances, which do not apply here. *See Jackson v. Kessner*, 206 A.D.2d 123, 126 (N.Y. App. Div. 1994); *McGill v Lazzaro*, 416 N.E.2d 29, 31 (Ill. App. Ct. 1980). In *McGill*, the Illinois appellate court explained that "[t]he well established rule in this state is that the executor or administrator of a decedent's estate has standing . . ., but the legatees, heirs, and devisees have no such standing." New York follows that same rule. *See Jackson*, 206 A.D.2d at 126.

Plaintiffs fail to allege that a lawful estate of Ms. Harrington exists and that either Plaintiff is the lawful executor or administrator of that estate.  Accordingly, Plaintiffs lack standing to assert claims on behalf of Ms. Harrington's estate, and the Complaint should be dismissed with prejudice.

**B.      Plaintiffs' Claims Are Time Barred**

In general, "the applicable Statute of Limitations is triggered once a cause of action accrues," which occurs "'when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court.'" *Matter of Motor Veh. Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.*, 674 N.E.2d 1349, 1352 (N.Y. 1996) (quoting *Aetna Life & Cas. Co. v. Nelson*, 492 N.E.2d 386, 389 (N.Y. 1986)).

Under applicable law, the statute of limitations period for the cognizable claims ranges from one (1) year (Counts 1-3) at the shortest, to six (6) years (Counts 6-10, 11) at the longest:

| SOL Period[7] | Claim (Count No.) | Authority |
|---|---|---|
| **1 Year** | Violation of the Right of Publicity Under NY & Ill. Law (1-3) | N.Y. Civ. Prac. Law & Rules, § 215(3); *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006). |
| **3 Years** | Unfair Competition (5 & 14) | The Lanham Act (Count 5 and Count 14) does not provide a specific statute of limitations. *See Hot Wax, Inc. v Warsaw Chem. Co.*, 45 F. Supp. 2d 635, 647 (N.D. Ill. 1999). The Supreme Court has indicated that federal courts should apply the statute of limitations from the most analogous state statute, which here would be the three-year statute of limitations applicable to an unfair competition claim under New York law. *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985); *Zinter Handling, Inc. v. General Elec. Co.*, 101 A.D.3d 1333, 1337 (N.Y. App. Div. 2012); *see also Futures, LLC-Series 2 v. Sysco Chi., Inc.*, 2012 WL 851556, at *3 (N.D. Ill. Mar. 13, 2012) (three years under Illinois law). |

---

[7] The PepsiCo Defendants believe that they have fairly construed the causes of action alleged, the governing jurisdictions, and the applicable statute of limitations An overly generous interpretation of Plaintiffs' claims would also implicate the following other statute of limitations: conversion under Illinois law--5 years (735 ILCS 5/13-205); breach of contract under Illinois law—oral 5 years ( 735 ILCS 5/13-205), written 10 years (735 ILCS 5/13-206); fraud under Illinois law—common law 5 years (735 ILCS 5/13-205), consumer fraud 3 years (815 ILCS 505/10a(e)); account stated under Illinois law—5 years (*Portfolio Acquisitions, LLC v. Feltman*, 391 Ill. App. 3d 642, 652 (Ill. App. Ct. 2009)); unjust enrichment under Illinois law—5 years (735 Ill. Comp. Stat. 5/13-205); and the Minnesota Human Rights Act—1 year (Minn. Stat. § 363A.28).

| SOL Period[7] | Claim (Count No.) | Authority |
|---|---|---|
| | Conversion (9) | N.Y. CPLR § 214(3); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 181 (2d Cir. 2000). |
| **6 Years** | Breach of Contract (6) | *In re R.M. Kliment & Frances Halsband, Architects*, 3 A.D.3d 143, 147 (N.Y. App. Div. 2004). |
| | Fraud (7 & 8) | N.Y. CPLR § 213(8). |
| | Accounting (10) | *Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, 2009 WL 2242331, at *5 n.15 (E.D.N.Y. July 27, 2009). |
| | Unjust Enrichment & Disgorgement (11) | *Id.* |

All of Plaintiffs' claims relate to Ms. Harrington's alleged relationship with Quaker, which, pursuant to the Complaint, terminated when the alleged 15-year contract expired in 1950 or at the latest 1955, when she died. (*See* Compl. ¶¶12-13, 49, 70.) Thus, the longest statute of limitations period available for any of Plaintiffs' claims would have expired six years after 1955, in 1961, and Plaintiffs filed their initial complaint on August 5, 2014.[8] Because all of Plaintiffs' claims are time barred, the Complaint should be dismissed.

## C. Plaintiffs Fail To State A Claim As A Matter of Law

Plaintiffs' claims are also defective because they either: (1) fail to plead claims recognized by any law, (2) do not plead the elements necessary of claims they are asserting, or (3) the claim is implausible or otherwise fails on its face.

---

[8] Plaintiffs also make a number of allegations relating to the purported use of images of Ms. Olivia Hunter, allegedly Ms. Harrington's daughter, beginning in 1989. (Compl. ¶¶132, 174, 207-17.) It is unclear whether Plaintiffs are attempting to assert a claim based on those allegations, but if so, assuming at most a six-year statute of limitations applies to these claims, the limitations period would have expired in 1995. In any event, Plaintiffs allege that Ms. Hunter passed away in 1992 (*see, e.g.*, Compl. Exs. 4 and 32), and they have not asserted any theory under which they or the estate of Ms. Harrington could recover on behalf of the estate of Ms. Hunter. Moreover, any claims as to Ms. Olivia Hunter suffer from the same defects as all of the claims purportedly brought on behalf of the estate of Ms. Harrington.

        **1.**     ***Claims Not Recognized by Law***

        *a.*     *Violation of the International Convention on the Elimination of all forms of Racial Discrimination (Counts 12 and 13)*

Plaintiffs' claims under the International Convention on the Elimination of All Forms of Racial Discrimination ("ICERD") are not recognized theories of recovery. A treaty does not become domestic law, and cannot support a private right of action, unless Congress has enacted implementing statutes or the treaty is self-executing. *See Medellin v. Texas*, 552 U.S. 491, 505, 128 S.Ct. 1346 (2008). Moreover, as to the ICERD, when the United States Senate ratified it, the Senate specifically stated that the ICERD was not self-executing. 140 Cong. Rec. S7634-02, 1994 WL 282789; *see also Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 768 (9th Cir. 2011). Because there is no private right of action under the ICERD, Counts 12 and 13 should be dismissed with prejudice.

        *b.*     *Civil Conspiracy (Count 4)*

New York law does not recognize civil conspiracy as an independent civil cause of action, rather a conspiracy claim stands or falls with the underlying tort. *Hebrew Inst. for Deaf & Exceptional Children v. Kahana*, 57 A.D.3d 734, 735 (N.Y. App. Div. 2008); *Salvatore v. Kumar*, 45 A.D.3d 560, 563 (N.Y. App. Div. 2007). Here, the tort underlying Plaintiffs' conspiracy claim appears to be the claims alleging violations of the International Convention on the Elimination of All Forms of Racial Discrimination (Compl. ¶107),[9] which fail for the reasons set forth above. Therefore, Count 4 should be dismissed with prejudice.

---

[9] Plaintiffs mention the Lanham Act in Count 4, but they appear to only do so for purposes of alleging the relief they are entitled to for PepsiCo Defendants' alleged violations of the International Convention on the Elimination of All Forms of Racial Discrimination. (Compl. ¶109.)

*c.*      *Attorneys' Fees and Costs (Count 15)*

There is also no stand alone claim for attorneys' fees and costs as plead in the Complaint. *See, e.g.*, *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1006 (7th Cir. 1989) (citing *Kerns v. Engelke*, 390 N.E.2d 859, 865 (Ill. 1979)). Moreover, Plaintiffs' allegations that they are entitled to attorneys' fees under the Illinois Right of Publicity Act and the Lanham Act fail because those claims fail. (*See* Sections C.2.a & C.3.a below.) And even where attorneys' fees are available, pro se litigants cannot seek them. *See e.g., Krecioch v. United States*, 316 F.3d 684, 688 (7th Cir. 2003). Accordingly, Count 15 should be dismissed with prejudice.

### 2.      *Counts That Fail To Adequately State A Claim*

*a.*      *Unfair Competition (Counts 5 and 14)*

Plaintiffs allege claims for "unfair competition" and "deceptive acts and practices" under Section 43 of the Lanham Act (15 U.S.C. § 1125)[10] and New York General Business Law Section 349.

*(i)*      *The Lanham Act*

To bring a false advertising claim under the Lanham Act, a plaintiff must allege that the defendant's actions resulted in consumers "withhold[ing] trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1395 (2014). Plaintiffs have not pleaded that the PepsiCo Defendants caused any trade to be withheld from them or Ms. Harrington. Rather, they specifically and only allege that Ms. Harrington contracted to work for Quaker at all

---

[10] Count 14 purports to bring a claim pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117), which provides for damages calculations for a number of statutes. However, Section 35 does not provide for a separate cause of action, and does not apply here because Plaintiffs' claims under the Lanham Act fail as a matter of law.

times relevant to these claims. (*See* Compl. ¶13.) Accordingly, Plaintiffs have not alleged a claim under the Lanham Act.[11]

Plaintiffs also do not adequately state a claim for false or deceptive advertising under the Lanham Act because the Complaint does not adequately allege any of the necessary elements or any supporting facts. To adequately plead a claim under the Lanham Act, a plaintiff must allege that:

> (1) the defendant made "a false statement of fact about its own or another's product in a commercial advertisement; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

For example, a plaintiff pursuing a false association or false endorsement claim must allege some "commercial interest" in her name and likeness that was injured by the defendant's actions. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir.1992). In order to establish a "commercial interest," a plaintiff must at least assert that he has plans to compete or an intent to commercialize an interest in the identity, "the mere potential of a commercial interest . . . is insufficient to confer standing." *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 890 (E.D. Wis. 2009).

Here, Plaintiffs have not plead that Ms. Harrington or her estate had any independent desire to commercialize her likeness beyond her alleged contractual relationship with Quaker, nor have they asserted that they are a trademark holder or have any legal basis to assert an

---

[11] Until the Supreme Court's decision in *Lexmark*, courts usually discussed this kind of limitation under the rubric of statutory standing. In *Lexmark*, however, the Supreme Court disapproved of the idea of "prudential" standing. Properly understood, the Court said, whether a plaintiff may sue "is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." 134 S. Ct. at 1387.

economic interest in Ms. Harrington's likeness. *See Cohen v. Facebook, Inc*, 798 F. Supp. 2d 1090, 1097-98 (N.D. Cal. 2011) (holding plaintiffs pursuing a false association or endorsement claim must be able to allege a commercial interest in their names and likeness akin to a trademark holder in controlling the commercial exploitation of his or her identity). For these reasons, Plaintiffs' claims under the Lanham Act should be dismissed with prejudice.

### (ii)    New York General Business Law

Plaintiffs' claims under Section 349 of the New York General Business Law should be dismissed for substantially the same reasons as their Lanham Act claims. A plaintiff bringing a claim under New York's deceptive trade practices statute must adequately plead three elements: (1) that the challenged act or practice was consumer-oriented; (2) that it was misleading in a material way; and (3) that the plaintiff suffered injury as a result of the deceptive act. *C=Holdings B.V. v. Asiarim Corporation*, 992 F. Supp. 2d 223, 242 (S.D.N.Y. 2013).

Plaintiffs do not allege that the PepsiCo Defendants' Aunt Jemima product advertising was misleading in a material way to consumers or the market. Moreover, Plaintiffs do not allege any specific injury they suffered as a result of any alleged misleading or deceptive advertising. For all of these additional reasons, Counts 5 and 14 should be dismissed with prejudice.

### b.    Breach of Contract (Count 6)

To state a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a contract, (2) the plaintiff's performance pursuant to the contract, (3) the defendant's breach of his or her contractual obligations, and (4) damages resulting from the breach. *See Dee v.*

14

*Rakower*, 112 A.D.3d 204, 208-209 (N.Y. App. Div. 2013).  Plaintiffs do not adequately allege any of these elements.[12]

Other than generally alleging that a contract between Ms. Harrington and Quaker existed, Plaintiffs do not provide a copy of the alleged written contract or attempt to set forth any of the details of its purported terms. Plaintiffs allege only that Ms. Harrington "entered into a written contractual agreement with Quaker Oats to do guest appearances and commercials for 15 years while using her 'own original pancake mix' and to share in the gross proceeds and/or royalties of any and all Aunt Jemima products over the duration of 15 years." (Compl. ¶70.)  They also make the conclusory allegation that she performed under the written contract and that Quaker failed to perform under the contract, without any details or supporting facts, such as the terms of compensation that allegedly were not fulfilled by Quaker.  (*See generally id.* ¶123-132.) Accordingly, Plaintiffs' contract claim should be dismissed with prejudice.

### c.    *Fraud (Counts 7 and 8)*

Plaintiffs allege two separate fraud claims, "Fraud by Concealment" and "Promissory Fraud." (Compl. ¶¶133-153.) Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To meet this standard, Rule 9(b) requires that a plaintiff allege "the who, what, where, and when of the alleged fraud." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Here, Plaintiffs' fraud claims are not plead with the specificity required by Federal Rule 9(b), because although Plaintiffs make repeated references to various allegations of fraud, they fail to allege who was involved in the fraudulent conduct, what the fraudulent conduct was,

---

[12] To the extent Plaintiffs attempt to allege a breach of an oral contract, that alleged contract supposedly requires royalty payments for 15 years (Compl. ¶70),and therefore would not be enforceable because it would need to be in writing under New York's statute of frauds. N.Y. Gen. Oblig. Law § 5-701.

where the fraud occurred, or when it occurred. (Compl. ¶¶1, 40, 42, 69, 87, 112, 119, 136.) Accordingly, Plaintiffs have failed to meet the most basic pleading requirements of Rule 9(b).

In addition, under New York law, to state a claim for promissory fraud a "plaintiff must show misrepresentations that are misstatements of material fact or promises with a present, but undisclosed, intent not to perform, not merely promissory statements regarding future acts." *Venables v. Sagona*, 85 A.D.3d 904, 906 (N.Y. App. Div. 2011). Here, Plaintiffs have not alleged any misstatement of a material fact by any defendant with a present, but undisclosed, intent not to perform on such promises.

Moreover, New York law does not allow "a separate fraud claim for fraudulent concealment of another tort, unless the fraud damages are 'different or additional' to the damages caused by the other tort." *Zimmerman v. Poly Prep Country Day School*, 888 F. Supp. 2d 317, 334 (E.D. N.Y. 2012) (quoting *La Brake v. Enzien*, 167 A.D.2d 709, 711 (N.Y. App. Div. 1990)). Plaintiffs' fraud claims should be dismissed with prejudice.

> d.    *Accounting (Count 10)*

Under New York law, a plaintiff must plead a contractual right to an accounting or "the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Lawrence v. Kennedy*, 95 A.D.3d 955, 958 (N.Y. App. Div. 2012). Plaintiffs do not allege any contractual right to an accounting (*see* Compl. ¶¶161-169), nor do they allege any confidential or fiduciary relationship that entitles them to an accounting. (*Id.*) Accordingly, Plaintiffs fail to state a cause of action for an accounting, and Count 10 should be dismissed with prejudice.

### 3. *Claims That Are Implausible Or Fail On Their Face*

#### a. *Publicity and Privacy Related Claims (Counts 1-3)*

Plaintiffs have alleged claims under both New York and Illinois law[13] alleging a violation of a right of publicity and right of privacy. Section 50 of the New York Civil Rights Law makes it a misdemeanor for a "corporation that uses for advertising purposes . . . the portrait . . . of any living person [.]" N.Y. Civ. Rights Law § 50. Section 51 of that same law supplies a private right of action created to enforce the rights protected in Section 50 of the law. Section 50 provides that the conduct prohibited in that section applies only to "living persons." N.Y. Civ. Rights Law § 50. Accordingly, New York courts are uniform in finding that the protections in Sections 50 and 51 of the act apply only to living people. *See, e.g., Frosch v. Grosset & Dunlap, Inc.*, 75 A.D.2d 768, 768 (N.Y. App. Div. 1980); *Smith v. Long Island Jewish-Hillside Med. Ctr.*, 118 A.D.2d 553, 554 (N.Y. App. Div. 1986). Because Plaintiffs are seeking damages on behalf of a deceased individual, their claims under New York law must be dismissed.

Moreover, New York law only provides a remedy to the extent a person's name, portrait, or picture are used for advertising purposes "without . . . written consent." N.Y. Civ. Rights Law § 50. Here, Plaintiffs do not allege that the PepsiCo Defendants are using Ms. Harrington's image for commercial purpose without consent.[14] Rather, Plaintiffs explicitly allege that

---

[13] Plaintiffs also plead analogous common law claims, but those claims are preempted by statute. *See Myskina v. Conde Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005); *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 928 (Ill. App. Ct. 2013). Additionally, Plaintiffs make reference to the California equivalent of the New York and Illinois right of publicity causes of action (Compl. ¶112), but for all relevant purposes the California statute generally tracks the New York and Illinois statutes. *See* Cal. Civ. Code § 3344. Plaintiffs do not allege any connection to or conduct in California that would cause these claims to be governed by California law.

[14] Plaintiffs allege that Ms. Harrington's image was deposited with the U.S. Patent and Trademark Office (USPTO) without consent (*see, e.g.,* Compl. ¶¶1, 94, 99, 104, 134, 135), while at the same time they explicitly allege that Ms. Harrington "entered into a written contractual agreement," which would include royalty payments "after immortalizing her imagine inside the USPTO throughout world commerce in

Ms. Harrington provided her written consent, by contract, to appear in advertisements for Aunt Jemima products on behalf of Quaker. (*Id*. ¶¶12, 49, 70.)

Despite that New York law should apply to Plaintiffs' "right of publicity" because Ms. Harrington "alleged to have resided in New York during the events giving rise to the claims," Plaintiffs also purport to bring claims under Illinois law. Section 30 of the Illinois Right of Publicity Act protects an individual's identity for 50 years after death if the person died after January 1, 1999. 765 ILCS 1075/30. Illinois' earlier common law right of publicity did not provide protection after death. *Carlson v. Del Pub. Co.*, 213 N.E. 2d 39, 42-43 (Ill. App. Ct. 1965). Therefore, individuals who died before 1999, such as Ms. Harrington, are not protected under the Illinois statute.[15]

Moreover, just as in New York, Illinois law only prohibits using a person's identity for a commercial purpose "without first having obtained previous written consent." 765 ILCS 1075/30; *see also Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 928-29 (Ill. App. Ct. 2013). Because the Complaint alleges that Ms. Harrington explicitly consented to the use of her image with the Aunt Jemima pancake mix, Plaintiffs' claims fail under Illinois law. Accordingly, Plaintiffs cannot state a cause of action for violation of the right to privacy or publicity under either New York or Illinois law, and Counts 1-3 should be dismissed with prejudice.

        *b.*    *Conversion (Count 9)*

Conversion occurs when a party, "intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that

---

advertisement and/or for various products." (*Id*. ¶73.) This Court need not accept inconsistent allegations as true. *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013).

[15] Even if the 50 year rule did apply here, that period would have expired in 2005 and plaintiffs would have needed to bring any claims within the one year statute of limitations. *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006).

person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 N.Y. 2006). "Two key elements of conversion are: (1) the plaintiff's possessory right or interest in the property, and (2) the defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id*. The Complaint does not adequately allege either of these elements.

Moreover, as a general matter, a cause of action for conversion may be dismissed as duplicative of a claim for breach of contract. *See Melcher v. Apollo Med. Fund Mgmt. LLC*, 25 A.D.3d 482, 483 (N.Y. App. Div. 2006).

Plaintiffs allege that there are unspecified royalties and money that the "plaintiffs' have an immediate right to possession of," but these alleged royalties appear to be the same royalties claimed under their breach of contract claim. Therefore, Plaintiffs' conversion claim is duplicative of their contract claim. Accordingly, Plaintiffs' claim for conversion should be dismissed.

### c.  Unjust Enrichment and Disgorgement (Count 11)

Plaintiffs allege that the defendants were "unjustly enriched by selling Aunt Jemima product lines without compensation to the Harrington family[.]" Under New York law, there can be no cause of action for unjust enrichment where a contract governs the same subject matter between the parties. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *Network Enters., Inc. v. Reality Racing, Inc.*, 2010 WL 3529237, *7 (S.D.N.Y. Aug. 24, 2010) ("[T]he existence of a valid and binding contract governing the subject matter at issue in a particular case does act to preclude a claim for unjust enrichment even against a third party non-signatory to the agreement.")

As with Plaintiffs' conversion claims, the allegations made in support of their unjust enrichment claim appear to allege that a contract governs the parties' relationship. Because the unjust enrichment claim is barred by the contract claim, it fails.

Moreover, "The New York Civil Rights law preempts all common law claims based on unauthorized use of name, image, or personality, including unjust enrichment claims." *Zoll v. Ruder Finn, Inc.*, 2004 U.S. Dist. LEXIS 144, at *12 (S.D.N.Y. Jan. 7, 2004). Accordingly, no cause of action for unjust enrichment exists under New York law because Plaintiffs' unjust enrichment claim arises from the alleged unauthorized use of Ms. Harrington's image.[16]

Plaintiffs' independent claim for disgorgement fails because disgorgement is "a remedy, not a separate claim." *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 2013 WL 3718071, at *10 (S.D.N.Y. July 15, 2013). Count 11 should be dismissed with prejudice.

### d. *Misappropriation of Trade Secrets*

Despite that Plaintiffs do not assert a claim for misappropriation of trade secrets in any of the Counts, they spend 18 paragraphs on allegations related to the alleged theft of Ms. Harrington's "64 recipes" and "22 menus" along with numerous additional allegations related to "corporate espionage." (Compl. ¶¶1, 2, 40, 50-63, 77-78, 82, 91, 113, 115, 124, 134, 138, 147, 157, 176, 181, 205, 219.) To the extent Plaintiffs are attempting to assert a claim for misappropriation of trade secrets, that claim should also be dismissed with prejudice.

To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that she possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of

---

[16] This argument applies equally to Plaintiffs' other common law claims, *i.e.* conversion and accounting.

discovery by improper means. *See Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir. 1993). Plaintiffs' complaint fails to establish either element.

"[A] trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.' " *Softel, Inc. v. Dragon Med. & Scientific Communs.*, 118 F.3d 955, 968 (2d Cir. 1997). In determining whether information constitutes a trade secret, New York courts consider the following factors: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Ashland Mgmt. Inc. v. Janien*, 624 N.E.2d 1007, 1013 (N.Y. 1993).

Here, Plaintiffs do not plead any facts that would establish the "64 recipes" and "22 menus" were trade secrets, for example,

- there is no allegation that Ms. Harrington was engaged in any competition with anyone in which she used these recipes or menus;
- there is no allegation that the recipes and menus were kept secret or what steps were taken to protect them;
- there is no allegation that any money or effort was expending in developing the menus or recipes; and
- there is no allegation that the PepsiCo Defendants used the menus or recipes in violation of any agreement, confidential relationship, or duty.

According to Plaintiffs' allegations, Ms. Harrington was "engag[ed]" by the PepsiCo Defendants to promote pancake products. (Compl. ¶138.) Indeed, during her engagement with Quaker, the "recipes" and "menus" at issue were included as a promotion with boxes of Aunt Jemima

21

pancake mix. (*Id.* ¶50.) To the extent Plaintiffs are alleging a claim for theft of trade secrets, it should be dismissed with prejudice.

### D.     Plaintiffs Fail To Allege Facts That Support A Claim Against Ms. Silverberg.

Plaintiffs' alleged fraud by concealment claims against Ms. Silverberg fail because they only assert implausible, conclusory allegations in support of those claims. (*See generally* Compl. ¶¶91, 94, 135, 138.) The Seventh Circuit has made clear that "allegations [that are] entirely conclusory and not supported by factual allegations" are insufficient. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 980 (7th Cir. 1999). Moreover, "group pleading is generally forbidden because each defendant is entitled to know what he is accused of doing." *Person Most Responsible v. Best Buy, Inc. (In re Musicland Holding Corp.)*, 398 B.R. 761, 774 (Bankr. S.D.N.Y. 2008). To the extent Plaintiffs' allegations relate to the alleged relationship between Ms. Harrington and Quaker, those allegations concern conduct that occurred 59 to 79 years ago—long before Ms. Silverberg ever worked at any of the PepsiCo Defendants, and therefore, are implausible. For these reasons, all claims against Ms. Silverberg should be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, the PepsiCo Defendants respectfully request that the Court enter an order dismissing all of Plaintiffs' claims with prejudice.

Respectfully submitted,

By:/s/ Dean N. Panos
    Dean N. Panos
    Jason M. Bradford
    Jenner & Block LLP
    353 N. Clark Street
    Chicago, IL 60654-3456
    Telephone:  312 222-9350
    Facsimile:  312 527-0484
    **Attorneys for PepsiCo, Inc., The Quaker**
    **Oats Company, and Janet Lynn Silverberg**