D. Hunter
1275 Lincoln Ave., Ste #1
St. Paul, MN 55105
612-395-9111(F)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

D. W. HUNTER, an Individual,
LARNELL EVANS. JR., an Individual
FOR THE ESTATE OF ANNA
SHORT HARRINGTON, an Individual
("AUNT JEMIMA")
PLAINTIFFS'
vs.
PEPSICO Inc., a Corporations, JANET LYNN SILVERBERG, an Individual, THE QUAKER OATS COMPANY, a Corporation, PINNACLE FOODS GROUP, LLC, a Corporation, and DOES 1 through 25, inclusive,
DEFENDANTS.

Judge: Edmond E. Chang
Case NO. **14CV6011**,

MEMORANDUM IN SUPPORT OF OBJECTION TO PEPSICO, QUAKER OATS, AND PINNACLE MOTION TO DISMISS DOCKET NO. 46 PURSUANT TO VIOLATIONS OF 15 U.S.C. §1051(B), 18 U.S.C.§ 1001



FILED
OCT 3 0 2014
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### MEMORANDUM OF LAW

Portraits and Pictures: Courts have construed the portrait/picture provisions of the statute somewhat broadly, to include "**any recognizable likeness, not just an actual photograph**." Burck v. Mars, Inc., 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008). The statute covers a representation if it "**conveys the essence and likeness of an individual**," even if the representation is not completely photo-realistic, but in the case now be the court the Conspirators utilized the Harrington actual likenesses. Onassis v. Christian Dior-New York, 472 N.Y.S. 2d 254, 261 (N.Y. Sup. Ct. 1984). Sculptures, mannequins, and other three-dimensional "likenesses" may be covered. Young v. Greneker Studios, 26 N.Y.S. 2d 357 (N.Y. Sup. Ct. 1941). (Exhs. 110, 111, 112, 113, 114, 115, 116, 201)

**Elements of a Claim for Unlawful Use of Name or Likeness**

A plaintiff must establish **three elements** to hold someone liable for **unlawful use** of name or **likeness:**

1. Use of a Protected Attribute: The plaintiff asserts and alleges the defendant used Anna Short Harrington's likeness, skin tone, hair color, other aspect of her identity that is protected by the law before her death. This law protects certain other personal attributes, including but not limited to the "Red Bandana".

2. For an Exploitative Purpose: The plaintiff asserts and alleges the defendants used Great Grandma Anna Short Harrington, Aunt Deloris Hoffman, Aunt Laura Mae Sizemore and Grandma Olivia Hunter's name, likeness, and wrongfully procured 64 recipes and 22 complete menus including but not limited to other personal attributes for commercial or other exploitative purposes.

3. No Consent: The plaintiff's assert and allege they checked the USPTO and there is not a consent form filed for Patent **Reg. No. 71385940 and/or Reg. No. 1697862.**



## IMPLICATIONS TO
## WILLFUL FALSE STATEMENTS

**(765 ILCS 1075/30)**

Sec. 30. Limitations regarding use of an individual's identity.

(a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.

(b) If an individual's **death occurs after the effective date of this Act,** a person may not use that individual's identity for commercial purposes for 50 years after the date of the individual's death **without having obtained previous written consent** from the **appropriate person or persons specified in Section 20 of this Act.** (Source: P.A. 90-747, eff. 1-1-99.)
http://www.ilga.gov/legislation/ilcs/ilcs3.asp?ActID=2241&ChapterID=62

§ 51. Action for injunction and for damages. Any person whose name **portrait, picture** or voice is used within this state for advertising purposes or for the purposes of trade **without the written consent** first obtained as above provided may maintain an **equitable action** in the supreme court of this state against the person, firm or **corporation** (i.e. Quaker Oats) so using his/her name, **portrait, picture** or **voice,** to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have **knowingly used** such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages. But nothing contained in this article shall be so construed as to prevent any person, firm or corporation from selling or otherwise transferring any material containing such name, portrait, picture or voice in whatever medium to any user of such name, portrait, picture or voice, or to any third party for sale or transfer directly or indirectly to such a user, for use in a manner lawful under this article; nothing contained in this article shall be so construed as to prevent any person, firm or corporation, practicing the profession of photography, from exhibiting in or about his or its establishment specimens of the work of such establishment, unless the same is continued by such person, firm or corporation after written notice objecting thereto has been given by the person portrayed; and nothing contained in this article shall be so construed as to prevent any person, firm or corporation from using the name, portrait, picture or voice of any manufacturer or dealer in connection with the goods, wares and merchandise manufactured, produced or dealt in by him which he has sold or disposed of with such name, portrait, picture or voice used in connection therewith; or from using the name, portrait, picture or voice of any author, composer or artist in connection with his literary, musical or artistic production which he has sold or disposed of with such name, portrait, picture or voice used in connection therewith. Nothing contained in this section shall be construed to prohibit the copyright owner of a sound recording from disposing of, dealing in, licensing or selling that sound recording to any party, if the right to dispose of, deal in, license or sell such sound recording has

been conferred by contract or other written document by such living person or the holder of such right. Nothing contained in the foregoing sentence shall be deemed to abrogate or otherwise limit any rights or remedies otherwise conferred by federal law or state law.

### Petrella v. Metro-Goldwyn-Mayer, Inc.
### Case No. 12-1315

Quaker Oats and PepsiCo Attorneys has conspired to mislead the court and the USPTO concerning collateral estoppel rules, and the Latches Doctrine, that do not trump the recent U.S. Supreme Court Decision concerning **Petrella vs. MGM.** "MGM is concerned that evidence needed or useful to defend against liability will be **lost during a copyright owner's inaction**. "**Congress must have been aware** that the passage of time and the author's death could cause evidentiary issues **when it provided for reversionary renewal rights** that an **author's heirs can exercise long after a work was written and copyrighted**. Moreover, because a copyright **plaintiff bears the burden of proving infringement, any hindrance caused by evidence unavailability is as likely to affect plaintiffs as defendants.** The need for extrinsic evidence is also reduced by the "**registration mechanism**," ("Emphasis Added" under which both the certificate and the original **work must be on file with the Copyright Office (i.e. Trademark Office) before a copyright owner can sue for infringement.**" "Careless observance by an agency of it's own administrative process weakens it's effectiveness in the eyes of the public because it exposes the possibility of "**FAVORITISM**" and of "**INCONSISTENT**" application of the law. In the case now before the Court, rule 60 Fed.R.Civ.P. permits the judiciary to impose disciplinary measures from for judgments and orders for certain reason. Among those reasons are (b)(1) mistake inadvertence, surprise, or inexcusable neglect; and (b)(3) actual fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.   http://supreme.justia.com/cases/federal/us/572/12-1315/




## LaVerne T. Thompson, USPTO Examining Attorney, Law Ofc. 116
### Violations 15 U.S.C. §1051(B) & 37 C.F.R. Secs. §2.34(a)(1)(i).

"The undersigned, being hereby "**WARNED**" ("emphasis added") that "**WIFUL FLASE STATEMENTS**" and the like so made are "**PUNISHABLE**" by fine or "**IMPRISONMENT**," or both, under **18 U.S.C. §1001**." "When the Applicant seeks a registration under Section 1(a) of the trademark Act, the mark "**WAS IN USE IN COMMERCE**" (Emphasis added") on or in connection with goods or services listed in the application as the application filing date." 37 C.F.R. Secs. §2.34(a)(1)(i). The Applicant, had to agree that "**willful false statements**" and the like will jeopardize the validity of the application or any resulting registration, declares that he/she is "**properly authorized**" to "**execute this application**" on behalf of the applicant; he/she **believes** that **applicant to be the owner** of **the trademark**/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. §1051(B), he/she believes applicant to be **ENTITLED** (Emphasis Added) <u>to use such mark in commerce</u>; to the best of **his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such "near resemblance"** (emphasis added thereto as to be likely, when **used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive**, that if the original application was submitted signed, that all statements in the original application was submitted unsigned, that all statement in the original application and **this submission made of the "declaration" signer's knowledge are true; and all statements in the original application and this submission made on information and belief are believed to be true**."

Due to the cited law, the Senior Legal Counsel for Quaker Oats in 1936 refused "**execute**" his name on the U.S.P.T.O. Applications **Reg. No. 71385940**, and forced Quaker Oats President to "Execute" his name instead.

"Fraud upon the court is fraud which is directed to the **judicial machinery** itself and is not fraud between the parties or fraudulent documents, false statements or perjury… "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of Fraud which does, or attempts to, **defile the court itself,** or is a fraud perpetrated by officers of

the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjuding cases that are presented for adjudication." Kenner v. C.I.R., 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by Fraud upon the court is not in essence a decision at all, and never becomes final."

It is also clear in Trademark law and well-settled that any attempt to commit "Fraud upon the U.S.P.T.O. and/or any Court" vitiates the entire proceeding. *The People of the State of Illinois v. Fred E. Sterling,* 357 Ill. 354; 192 N.E. 229 (1934) (**"The maxim that fraud vitiates very transaction into which it enters applies to orders and judgments, as well as, to contracts and other transactions.")** ; Allen F. Moore v. Stanley F. Sievers, 336 Ill. 316; 168 N.E. 259 (1929) ("The maxim that fraud vitiates every transaction into which it enters…"; In re Village of Willowbrook, 37 Ill.App.2d 393 (162) ("It is axiomatic that fraud vitiates everything."); Dunham v. Dunham, 57 Ill. App. 475 (1894), affirmed 162 Ill. 589 (1896); Skelly Oil Co. V. Universal Oil Products Co., 338 Ill. App. 79, 86 N.E. 2d 875, 883-4 (1949); Thomas Stasel v. The American Home Security Corporation, 362 Ill. 350; 199 N.E. 798 (1935).

Under Minnesota, New York, and Illinois concerning Federal law, when an officer of the court (i.e. Attorney) commits "Fraud upon the court," the orders and judgment of that court become void, of no legal force or effect.

Such misconduct becomes a violation of the plaintiffs Fourth Amendment Rights. Id. At 12. Citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Material fact issues regarding Defendant's summary judgment of bad faith, fraud and conspiracy should have precluded summary judgment because the Defendants failed to attach a Affidavit to the Rule 12 motion. No Rule 12 motion can be granted by a moving defendant without an affidavit to extinguish the Plaintiff affidavit that become a "Crystalized Issue" within 30 days of the defendant being served with a summons and complaint.

**LIBEL**



"The image symbolizes a sense of caring, warmth, hospitality and comfort and is neither based on, nor meant to depict any one person," according to a statement from Quaker Oats, a subsidiary of PepsiCo . "While we cannot discuss the details of pending litigation, we do not believe there is any merit to this lawsuit."

http://www.foxnews.com/leisure/2014/10/07/another-aunt-jemima-family-seeks-dough-from-pancake-proceeds/

All **true crimes** require two elements. The first is the prohibited act, referred to in law as "*actus reus*". To be a crime this act has to be accompanied by "*mens rea*," criminal intent. The U.S. Supreme Court said in <u>*Morissette vs. U.S.*</u> that criminal intent involves an "**evil – meaning mind**," variously described with respect to different crimes as "**intentional**" knowing, **fraudulent, malicious etc**. Each crime has different *mens rea*. For example the *mens rea* for murder is "**malice aforethought**." For there to be a crime, the commission of prohibited act and criminal intent (*mens rea*) have to concur in time.

In 1963 in an Illinois case, <u>***People v. Coolidge***</u> it was found "since every Sane Man such as a "Seasoned Attorney" is presumed to intend all the natural and probable consequences flowing from his/her **own deliberate act**, it follows that if one willfully does an act, the natural tendency of which is to destroy another's life, the irresistible conclusion is that the destruction of such other **persons life was intended**." It can also be premeditated intend to do an act "**without regard for the life and safety of others**," which is implied malice. Malice does not necessarily imply ill-will, spite, hatred or hostility by the perpetrator toward the bereaved. **Malice** is a state of mind showing a heart **[not regardful] of the life and safety of others**…(i.e. Grandma Olivia Hunter)

The Trademark Trial and Appeal Board have synthesized this standard to three elements: Statements that are (1) **"false,"** (2) **"material,"** and (3) **"made knowingly."** *Mister Leonard Inc. v. Jacques Leonard Couture Inc.,* 23 U.S.P.Q.2d 1064, 1066 (T.T.A.B. 1992)(emphasis in original)."The specific or actual intent of [opposer's declarants] is not material to the question of fraud or deception. . . . [F]raud or deception occurs when an applicant or registrant makes a false material representation that the applicant or registrant **knew or should** have known was **false.**" Registrant and its

attorney shared the duty to ensure the accuracy of the application and the truth of its statements, pursuant to 18 U.S.C. §§§§2, 3, 4, and 1001.

Malice can also be defined as a condition of mind which prompts a person to do willfully, that is, on purpose, without adequate justification or excuse, a wrongful act whose **foreseeable consequences is serious bodily injury to another**. (i.e. 11/28/13 - Constructive Notice of Sister L. Davis need of a Life-saving Surgery) Surely, the Conspirator(s) knew or should have known failure to timely pay an equitable fair share of royalties pending the matter concerning the heirs lawful rights of ownership would manifest physical injury to the Great Granddaughter of Anna Short Harrington and Olivia Hunter. Whether or not the perpetrators intent or state of mind committed acts that concurred in time rest only as a matter for a jury trial to adjudicate the "**Mosaic of Guilt**" or "**Facts**".

Plaintiffs asserts they represent a class around 15 family members that will include additional parties such as Nancy Green's Grandchildren. If the Court has made contact with Nancy Green's Grandchildren, Plaintiff graciously requests the Court to place both families in contact so that we can strategize to respond together with all material evidence to be entered into court record. Plaintiff cannot fully respond to the motion to dismiss because the Certified Government Documents from within the Bureaus of Vital Statistics in Syracuse, and Illinois that are needed concerning the early demise of Nancy Green and Aunt Deloris Hoffman; in addition, to other documents generated by the U.S.P.T.O.

DATED: **October 27, 2014**                                  **Respectfully Submitted,**

_____
D H

# Invoking Aunt Jemima Doctrine



Exh. 111

# Invoking Aunt Jemima Doctrine

APPLE SPICE PANCAKES

Fold 1 cup chopped uncooked apples into Aunt Jemima batter before baking.

Serve with butter and topping mixture of ½ cup sugar and 2 tablespoons cinnamon.

BLUEBERRY PANCAKES

Fold 1 cup fresh or frozen blueberries into Aunt Jemima batter before baking.

Serve with butter and sugar or syrup.

BANANA PANCAKES

Add ¼ cup sugar to Aunt Jemima Ready-Mix before adding milk. Slice 2 bananas and add to batter before baking.

Serve with butter and syrup as a dessert.

MINCEMEAT PANCAKES

Fold ⅔ to 1 cup mincemeat into Aunt Jemima batter before baking.

Serve with hot syrup.

CORN PANCAKES

Fold 1 cup corn into Aunt Jemima batter before baking.

Serve with syrup, honey or creamed meat sa[illegible]

7

SAUSAGE PATTIES

Combine 1 lb. pork sausage meat, 1 cup Quaker or Mother's Oats (quick or old-fashioned, uncooked), ⅔ cup water, 1 teaspoon salt, ¼ teaspoon pepper and ¼ teaspoon sage. Shape into 16 patties and chill in refrigerator. Dip patties in beaten egg, then roll in fine dry bread crumbs. Pan fry slowly in small amount of fat about 15 minutes.

OVEN COOKED BACON

Place slices of bacon on a wire rack set in a shallow baking pan. Bake in a moderately hot oven (400°F.) 12 to 15 minutes or until lightly crisped.

BROILED FRANKFURTERS

Wrap a slice of bacon around each frankfurter. Secure with toothpicks. Place in pan and set 5 or 6 inches under broiler. Broil for 10 minutes until bacon is lightly crisped.

8

**Exh. 112**



### The Story of Aunt Jemima Paperback
by John Troy McQueen (Author)

1 customer review

Paperback
$10.79

7 Used from $0.01
19 New from $8.49

¿ The story of Aunt Jemima ¿ is a biography about the life of the real Annie Short Harrington (1897-1955), written in picture book form. She was born in rural Marlboro County in the community now known as Wallace, South Carolina. The county seat is Bennettsville. The Short Family lived on the Peguese Plantation, where they picked cotton and worked in tobacco as ¿ sharecroppers. ¿ Her last surviving sibling, Lila Short Davis, provided most of the information about her through interviews. She died during the early 1990s. Her niece, Lenora Harrington Peguese also contributed to this story. Annie(also known as Ann and Anna) Short Harrington left the South going North to look for work, to support her five young children ¿ three daughters and two sons. She found domestic work in the homes of wealthy people, including Governors. Syracuse, New York was where she eventually settled. There she worked for a fraternity house at Syracuse University. Mrs. Harrington¿s fame was launched at a Fairground in the Syracuse, New York area in 1935. She was cooking pancakes there when she was discovered by the Quaker Oats Company ¿ her picture drawn, and her image publicized all over America as ¿Aunt Jemima. ¿ She died in 1955 at the age of fifty- eight. Her remains were buried at Oakwood Cemetery in Syracuse, New York, at grave plot number 63 ¿ section H-4. Many of her relatives continue to live in the Wallace Community in South Carolina. They are proud of her niche in history.

▲ Read less

**Exh. 122**

11

# CERTIFICATE OF SERVICE

FOR THE COUNTY OF ]
RAMSEY IN THE ]ss.  Case No.: __14-CV-6011__
STATE OF MINNESOTA ]

I, _____, HEREBY certify that I am over the age of 18 years old, and located at __1275 Lincoln Ave., Ste #1, St. Paul, MN 55105__. I certify that I have placed a prepaid postage, true and complete original to the court and copies to the party(is) of record at the U.S. Postal Office located at Post Office on the date of October 2014, for this action of the following:

**Motion Default + Memorandum + Exhibits 110, 111, 112, 113, 114, 115, 122**

| | |
|---|---|
| Mr. Dean N. Panos<br>Jenner & Block LLP<br>PepsiCo,<br>The Quaker Oats Company<br>353 N. Clark Street, Chicago, IL 60654-3456<br>\| jenner.com<br>(312) 923-2765 \| TEL<br>(312) 840-7765 \| FAX | Stephanie A. Scharf<br>Scharf, Banks & Maromor<br>333 West Wacker Drive<br>Suite #450<br>Chicago, IL 60606<br>312-662-6999<br>Email: scharf@scharfbanks.com |
| Almee E. Graham<br>John I. Grossbart<br>The Hillshire Brands Company,<br>Associate<br>Dentons U.S. LLP<br>233 South Wacker Drive<br>Suite #7600<br>Chicago, IL 606-6-6404 | Special Agent in Charge<br>Robert J. Holley<br>Federal Bureau of Investigation<br>2111 W. Roosevelt Road<br>Chicago, IL 60608<br>Phone: (312) 421-6700<br>Fax: (312) 829-5732/38<br>E-mail: Chicago@ic.fbi.gov |
| c/o Clerk<br>United States District Court<br>Northern District of Illinois<br>Everett McKinley Dirksen<br>United States Courthouse<br>219 South Dearborn Street<br>Chicago, IL 60604 | |

I declare under the penalty of perjury under the laws of the State of Minnesota and/or N. Carolina that the above is true and correct.

Date: **10/20/14**

Respectfully Submitted,

[signature]