UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| DANNEZ W. HUNTER and LARNELL EVANS, JR., | ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 06011 |
| v. | ) ) ) | Judge Edmond E. Chang |
| PEPSICO INC., THE QUAKER OATS COMPANY, JANET LYNN SILVERBERG, PINNACLE FOODS GROUP, LLC, THE HILLSHIRE BRANDS COMPANY, and JOHN DOES 1 through 25, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER

*Pro se* Plaintiffs Dannez W. Hunter and Larnell Evans, Jr. assert that they are the great-grandsons of Anna Short Harrington, a woman who portrayed Aunt Jemima (the marketing face of the pancake-mix and syrup brand) from 1935 until the 1950s. Hunter and Evans purport to represent Harrington's estate and a class of her decedents in this suit seeking $3 billion from a number of companies and individuals, based on a litany of alleged international, federal, and state law claims, including (among others) fraud, conspiracy, unfair competition, and discrimination in connection with Harrington's work as Aunt Jemima.[1] The various Defendants

---

[1] The basis of the Court's jurisdiction is 28 U.S.C. § 1331, because the amended complaint raises a federal claim under the Lanham Act, 15 U.S.C. § 1125, with supplemental jurisdiction over the state law claims.

have moved to dismiss the action for failure to state a claim. The motions are granted.

## I. Background

Over the course of 60 pages, the amended complaint, to which 80 pages of exhibits are also attached, touches on an array of topics, including former New York Governor Thomas Dewey, the West African slave trade, the Chicago World Fair of 1893, and the Screen Actors Guild. *See* R. 15, Am. Compl. ¶¶ 10, 15, 46, 64.[2] But the operative factual allegations boil down to the following, which must be accepted as true for purposes of evaluating the dismissal motions. Anna Short Harrington, a domestic worker and famed pancake cook living in Syracuse, New York, was discovered by the Quaker Oats Company at a state fair in 1935 and recruited to play Aunt Jemima.[3] *Id*. ¶¶ 10-11. Preying upon her lack of education, Quaker Oats allegedly convinced Harrington to enter an exploitative contract and for 15 years she made commercials and public appearances for the company. *Id*. ¶¶ 12, 13. Harrington traveled across the country by train, visiting different cities in character as Aunt Jemima while making pancakes from her own formula. *Id*. ¶ 75. Harrington's contract provided that she would receive a percentage of the proceeds as well as royalties for the use of her image. *Id*. ¶ 73. Harrington died in 1955. *Id*. ¶ 13. The amended complaint alleges that no royalties or other revenues have been

---

[2] Citations to the docket are indicated as "R." followed by the entry number and a description of the document.
[3] Harrington allegedly did not originate the role, which has been played by several other women since the late 19th century, including three of Harrington's daughters according to Plaintiffs. *See* Am. Compl. ¶¶ 19, 46, 138.

paid to Harrington's estate and that Harrington's pancake formula, a trade secret, was wrongfully stolen through an act of "industrial espionage." *Id*. ¶¶ 6, 76, 77.

Plaintiffs Hunter and Evans claim that they are Harrington's great-grandsons. *Id*. ¶¶ 22, 23. On purported behalf of Harrington's estate, they seek $3 billion ($1 billion of it in equity stock) in damages from PepsiCo Inc., The Quaker Oats Company, Janet Lynn Silverberg, Pinnacle Foods Group, LLC, The Hillshire Brands Company, and numerous John Does. *Id*. at Prayer for Relief. Plaintiffs assume PepsiCo and Quaker Oats to be related corporate entities throughout the amended complaint and for all supposedly relevant times, and the complaint also identifies Silverberg as PepsiCo's "Chief Trademark Attorney" (collectively, the PepsiCo Defendants). *Id*. ¶ 24.5. Pinnacle Foods' inclusion as a Defendant appears to stem from the allegation that, in 1996, Aunt Jemima frozen products were licensed to the company. *Id*. ¶ 61. Hillshire appears to have been named based on Plaintiffs' belief that it merged with Pinnacle Foods in 2014. *Id*. ¶ 88.

Plaintiffs assert fifteen separate causes of action: (1) deprivation of the right of publicity under New York law; (2) deprivation of the right of publicity under Illinois law; (3) violation of the right of publicity under Illinois and New York common law; (4) civil conspiracy; (5) unfair competition in violation of federal law; (6) breach of contract; (7) fraud by concealment; (8) "promissory fraud"; (9) conversion; (10) accounting; (11) unjust enrichment and disgorgement; (12) disparate impact under the International Convention on the Elimination of all Forms of Racial Discrimination; (13) violation of the International Convention on

3

the Elimination of all Forms of Racial Discrimination; (14) "deceptive acts and practices"; and (15) "attorney's fees and costs." *Id.* ¶¶ 92-223. Since filing the amended complaint in August 2014, Plaintiffs have filed numerous meritless motions, in response to which the Court issued repeated warnings about Plaintiffs' abuse of the litigation process. *See, e.g.*, R. 28, Minute Entry (denying motions for sanctions based on statements made unrelated to the present case); R. 36 (denying motion for "judicial notice" brought under a non-existent statutory provision); R. 50 (denying motion to exhume graves based on information contained in a Wikipedia-parody website). Still pending are three more motions filed by Plaintiffs: one for leave of this Court for Plaintiffs to be named administrators and executors of Harrington's estate [R. 78], one for a change of venue to Washington, D.C. because of the Court's alleged bias [R. 80, 84], and a motion "for an extension and enlargements of time to enter the Surrogate Court of Onondaga" [R. 86].

Defendants now move to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(6) and 8(a)(2) on related grounds that the claims are time-barred, that Plaintiffs lack standing, and that Plaintiffs have not pled cognizable claims. R. 53, Pinnacle Foods Mot. Dismiss; R. 55, Hillshire Mot. Dismiss; R. 58, PepsiCo Defs. Mot. Dismiss. Plaintiffs filed an "Objection" to the motions to dismiss and an opposition brief, neither of which are responsive in any way to Defendants' arguments, instead raising unrelated points in an incoherent manner. *See* R. 63, Pls.' Obj. to Defs.' "Quid Quo Pro Motion to Dismiss"; R. 64, Pls.' Resp. Br.

4

## II. Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

### A. Motions to Dismiss

Plaintiffs have filed suit not on their own behalf, but in the name of Harrington's estate. *See, e.g.*, Am. Compl. ¶¶ 6, 8. Both New York and Illinois law (which Plaintiffs invoke as the basis of most of their claims) are clear that only executors or administrators of an estate may bring an action in furtherance of the estate's interests. *Jackson v. Kessner*, 206 A.D.2d 123, 126 (N.Y. 1st Dep't 1994) ("It is elementary that the executors or administrators represent the legatees, creditors and distributees in the administration of the estate; that their duty is to recover the property of the estate[.]") (quoting *McQuaide v. Perot*, 223 N.Y. 75, 79 (1918)); *McGill v. Lazzaro*, 416 N.E.2d 29, 31 (Ill. App. 1980) ("The well established rule in this state is that the executor or administrator of a decedent's estate has standing to file suit on behalf of the decedent, but the legatees, heirs, and devisees have no such standing.") (citing *Claussen v. Claussen*, 116 N.E. 693, 696 (Ill. 1917)). Yet Plaintiffs do not allege that they are authorized to act as executors or administrators of Harrington's estate, or even that such an estate exists (or ever existed).

Indeed, it is clear from Plaintiffs' motion for leave to become the administrators and executors of Harrington's estate as well as that of two other purported relatives in Syracuse, New York, that Plaintiffs do not have this authority. *See* R. 78, Mot. (Plaintiffs cite no authority allowing this Court to appoint them; the Court has no jurisdiction over probate matters in New York State, and

Harrington passed away decades ago.) The only information about Plaintiffs' connection to Harrington provided by the amended complaint is an account of how Hunter received a photograph (now lost) of Harrington from his grandmother and of Plaintiffs' attempt to locate Harrington's grave in Syracuse, New York. Am. Compl. ¶¶ 82-85. Although Plaintiffs no doubt believe they stand to benefit as Harrington's decedents from a potential $3 billion judgment, even if a Harrington estate did in fact exist, a mere beneficiary "cannot act on behalf of the estate or exercise the fiduciary's rights with respect to estate property, even if beneficiary and fiduciary are one and the same person." *Jackson*, 206 A.D.2d at 127 (noting that exception to this rule made only in extraordinary circumstances, such as when fiduciary refuses to act); *see also McGill*, 416 N.E.2d at 31.

Defendants raise other arguments in support of their motions to dismiss, which at first blush also appear to be meritorious: the statutes of limitation have long run on Plaintiffs' litany of claims, which arise out of a contract that expired with Harrington's death six decades ago; Plaintiffs raise some causes of action, like the claims under the International Convention on the Elimination of all Forms of Racial Discrimination, that are not actionable; Plaintiffs do not plead necessary elements of some claims, such as the Lanham Act claims; and Plaintiffs fail to plead any facts at all supporting the liability of some of the Defendants. *See, e.g.*, R. 59, PepsiCo Defs.' Br. at 9-22; R. 56, Hillshire Br. at 3; R. 53, Pinnacle Foods Br. at 2-4. It is also true that Plaintiffs' failure to respond in any way to the substance of Defendants' motions in their opposition papers may itself warrant dismissal. R. 74,

PepsiCo Defs.' Reply Br. at 2 (citing *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [courts] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response."). Ultimately, however, because Plaintiffs' lack of standing based on the pleadings is so clear, the Court need not address these alternate grounds in dismissing the amended complaint.

Finally, the dismissal is made with prejudice. Although Plaintiffs here are proceeding *pro se*, leave to file an amended complaint is inappropriate because it is clear that there is no possibility of fixing the complaint. Moreover, Plaintiffs' failure to respond substantively to Defendants' motions to dismiss further supports a with-prejudice dismissal. *See, e.g.*, *Dillard v. Chicago State Univ.*, 2012 WL 714727, at *3 (N.D. Ill. Mar. 1, 2012).

## B. Miscellaneous Motions

For completeness' sake, the Court briefly addresses Plaintiffs' miscellaneous motions. This Court does not have authority over probate matters in New York State and cannot name Plaintiffs executors and administrators of Harrington's estate. Nor can the Court provide an extension of time for Plaintiffs to enter Surrogate's Court of Onondaga, a request for relief that is unintelligible. Therefore, the motions at R. 78 and 86 are denied.

On the motion for a new venue of Washington, D.C., the Court construes this request as a motion for disqualification based on alleged bias. A federal judge must

"disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A party seeking disqualification must make an objective showing of personal bias arising from an extrajudicial source of conflict, supported by compelling evidence. *See Hook v. McDade*, 89 F.3d 350, 354-55 (7th Cir. 1996). Because Plaintiffs make no such showing, the motion (Notice at R. 80, superseded by Revised Notice at R. 84) is denied.

### IV. Conclusion

For the reasons explained above, Defendants' motions to dismiss the amended complaint [R. 53, 55, 58] are granted and the case is terminated. Plaintiffs' miscellaneous motions [R. 78, 80, 84, 86] are denied.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 18, 2015